[No. 3282.   Decided July 19, 1899.]

THE STATE OF WASHINGTON, *on the Relation of George
M. Hellar,* v. C. W. YOUNG, *as State Treasurer.*

CONSTITUTIONAL LAW—INVESTMENT OF PERMANENT SCHOOL FUND.

Warrants drawn by the auditor upon the general fund of the
state do not constitute bonds, in which the permanent school fund
may be invested, within the meaning of § 5, art. 16, of the consti-
tution, which provides that "none of the permanent school fund
shall ever be loaned to private persons or corporations, but it may
be invested in national, state, county or municipal bonds;" hence,
Laws 1899, p. 53, authorizing the investment of the permanent
school fund in state warrants, is unconstitutional.

MANDAMUS — TO STATE TREASURER — COMPELLING INDORSEMENT OF
STATE WARRANTS.

It being a duty imposed upon the state treasurer by law to
indorse all state warrants "not paid for want of funds," when
there is no money in the treasury applicable to their payment,
mandamus will issue at the suit of a private person to compel
performance of that duty, where he is the holder of a state war-
rant, which the treasurer has refused to so indorse.

*Original Application for Mandamus.*

*O. G. Ellis* and *W. H. Pratt,* for relator.

*Thomas M. Vance,* Assistant Attorney General, for re-
spondent.

The opinion of the court was delivered by

GORDON, C. J.—The relator is the holder of a warrant
drawn by the auditor of the state upon the state's general
fund.    The object of this proceeding is to compel the
treasurer to make the indorsement which the law requires
the treasurer to make whenever a warrant is presented to
him and he has not sufficient funds with which to meet it.
The affidavit in the present case shows that there was no
money in the general fund legally available for the pay-
ment of the relator's warrant, but that, claiming to act

under authority of ch. 41, Session Laws 1899, p. 53, the respondent proposed to pay the warrant from moneys belonging to the permanent school fund of the state, and the case presents for determination the constitutionality of that enactment.      Section 5, art. 16, of the constitution of this state is as follows:

" None of the permanent school fund shall ever be loaned to private persons or corporations, but it may be invested in national, state, county or municipal bonds."

The first and main question to be determined is, are warrants of the character herein referred to bonds, within the meaning of this provision of the constitution?      Necessarily, it follows that, if the permanent school fund of the state, which was intended to be kept secure at all times, can be invested in state warrants, then it can, upon equal authority, be invested in county, city, or school warrants. It cannot be held that the legislature can authorize the investment of the permanent school fund in the general warrants of the state without going further and holding that it may also authorize the investment of the same funds in town, city, county or school warrants.      Neither in legal strictness nor in the common acceptation of the term can a warrant be considered a bond.

This is the main question, and the only substantial question which the record in the case presents.      A minor one is that the relator has no standing in the case and lacks capacity to wage the litigation.      The argument in support of this proposition is that, if the proper law officers of the state refuse to interfere, the relator, who is a private citizen, and a mere creditor, is bound to be satisfied with any money he may get in exchange for the paper of the state which he holds. · But the permanent school fund of this state must be regarded as a trust fund.      It has been made such by the constitution, and we see no reason why the principle which permits trust funds to be followed into the

hands of any one illegally receiving them .is not applicable to the present case.    The general rule is that one who receives from a trustee payment in trust funds not legally available or applicable to that payment, can be made to restore the amount so received.    The purpose of § 5, art. 9, of the constitution, providing that "All losses to the permanent common school or any other state educational fund which shall be occasioned by defalcation, mismanagement or fraud of the agents or officers controlling or managing the same shall be audited by the proper authorities of the state," and "The amount so audited shall be a permanent funded debt against the state in favor of the particular fund sustaining such loss," etc., was not to render the fund *less,* but *more,* secure.    Its purpose was not to relieve one from the liability of restoring what he had illegally obtained, but to make the state a guarantor as against the acts of its officers as mentioned in this section. We do not think that the relator could, for a moment, be permitted to urge this provision of the constitution if called upon to restore trust funds illegally received.    If this position is correct, then he has such an interest in the present proceeding as will enable him to maintain it and to compel the performance of a duty which the respondent in the present instance owes to him, as distinguished from that owing to the public at large.    As regards the warrant in question, the respondent owes the relator a duty which he does not owe to any other citizen of the state, or to any other person whatever, and mandamus is the proper method to compel the performance of a duty specially enjoined by law.

But counsel for respondent urges that in legal contemplation the statutory conditions are to be regarded as if written into the warrant, and that relator cannot refuse to take any funds in payment of his warrant that the treasurer may offer to him.    The fallacy of this position is

apparent.   The legislation in the present instance is in
violation of the constitution, and leaves the case in all
respects the same as if it had never been passed.   To hold
that the relator is bound to accept payment in any funds
offered him, without regard to their source or character,
would be the announcement of a most pernicious and mis-
chievous doctrine.   All that is asked in the present in-
stance is that the respondent shall perform his legal duty,
and he cannot be excused from such performance by the
plea that the relator has no interest in its performance.   The
treasurer cannot take the position that the state stands
ready to pay its obligation to relator, because, as matter of
law, he has no funds legally at his disposal with which to
make such payment.   The contrary notion confounds the
state with the officer, and makes no distinction between
acts of the latter that are made under constitutional and
legal sanction and those claimed to be done under invalid,
unconstitutional enactments.   The respondent cannot be
heard to urge that relator is bound to accept payment of
his warrant in any funds the state may offer him; it is
enough to know that, as matter of law, the state has no
funds with which it can make such an offer.

Having concluded that under § 5, art. 16, supra, the
permanent school fund cannot be invested in state war-
rants, it necessarily follows that the relator in the present
case has such an interest as enables him to maintain the
proceeding, and the writ must be awarded.

Since the enactment of ch. 44, Laws 1899, p. 67, author-
izing the issuance of state bonds and the investment of the
permanent school funds therein, and the decision in *State
ex rel. Winston v. Rogers,* filed June 3, 1899, *ante,* p. 206,
there is very little left of importance in the decision of the
present question, except the principle underlying it, the
effect of the legislation last referred to being to afford a
means for the investment of this money in bonds of the

state which, as already noticed, the constitution permits and commends.

FULLERTON, J., concurs.

REAVIS, J., concurs in the result.

ANDERS, J.—It is clear to my mind that the act authorizing the investment of the permanent school fund in state warrants is in contravention of the state constitution, and therefore void. And, assuming that to be so, according to the conceded facts of this case, there was no money in the treasury legally applicable to the payment of relator's warrant when presented, and he was, therefore, under the law applicable to the subject, entitled to have his warrant indorsed "Not paid for want of funds." The relator's rights were not changed by this unconstitutional act at all, but remained the same as though it had never been passed. In my judgment, the ownership alone of the warrant conferred the right upon the relator to maintain this proceeding, irrespective of any supposed liability as a trustee for trust funds. I therefore concur in the conclusion announced in the foregoing opinion of the Chief Justice.