## JOHANSON v. WASHINGTON.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 282.  Argued May 1, 1903.—Decided June 1, 1903.

Whether one assuming to act for a State or Territory in selecting school lands in lieu of sections 16 and 36 had the authority to do so is a State and not a Federal question. The policy of the Government in respect to grants for school purposes has been a generous one, and acts making such grants are to be so construed as to carry out the intent of Congress, however difficult it might be to give full effect to the language used if the grants were by instrument of private conveyance.

While ordinarily a special law is not repealed by a subsequent general statute, unless the intent so to do is obvious, yet the latter act may apply to cases not provided for by the former. The general act of Congress of 1859 as to selection of school lands in lieu of sections 16 and 36 is applicable to Washington although a special statute was passed as to it in 1853. The act of 1902 confirming selections approved by the Secretary of the Interior referred to past as well as future approvals.

The general supervision of the affairs of the Land Department is now vested in the Secretary of the Interior, and, unless Congress clearly designates some other officer to act in respect to such matters, it will be assumed that he is the officer to represent the Government. His approval of a selection made by one claiming to represent a State or Territory of lands in lieu of school sections 16 and 36 under the acts of 1853 and 1859, is, at least, a withdrawal of the selected land from private entry which continues until the selection is set aside, and if such person was authorized to act, the approval of the selection so made is, unless some direction of Congress was violated, conclusive upon the transfer of title of the selected lands.

THIS was an action of ejectment brought in the Superior Court of King County, Washington. The case was tried by the court without a jury. An agreed statement of facts was submitted, upon which the court found the following facts and conclusions of law :

"1. That the north half of the southwest quarter and the northwest quarter of the southeast quarter of section 3, township 25 north, range 4 east, is of the value of twenty thousand dollars, and was selected by Phillip H. Lewis, as agent for King County, Washington Territory, by filing a list of this and other lands designated as list No. 2 of indemnity school selection at the land office at Olympia, Washington Territory, May 24, 1870, under an act of Congress approved March 2, 1853, and an act of Congress approved February 26, 1859, which said selection was approved by Secretary C. Delano, January 27, 1872.

"2. March 13, 1893, Anton Johanson made application to enter the land aforesaid under the homestead laws, and at that time made a settlement thereon; he has ever since lived on said land ; his application was rejected by the local land office, and subsequently appealed to the Commissioner of the General Land Office, and finally to the Secretary of the Interior, who,

on December 18, 1895, decided adversely to Anton Johanson."

From the foregoing facts the court finds as conclusions of law:

"1. That the plaintiff was on the 13th day of March, 1893, seized in fee and possessed and entitled to the possession to said north half of the southwest quarter and the northwest quarter of the southeast quarter, section 3, township 25 north, range 4 east.

"2. That on the said 13th day of March, 1893, defendant unlawfully entered said premises and ejected the plaintiff therefrom, and unlawfully retains possession thereof."

The judgment of the Superior Court having been affirmed by the Supreme Court of the State, 26 Washington, 668, the case was brought here on error.

*Mr. C. W. Corliss* for plaintiff in error. *Mr. O. C. McGilvra, Mr. Henry W. Lung* and *Mr. John F. Main* were on the brief.

*Mr. W. B. Stratton,* attorney general of the State of Washington, for defendant in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

Under the statutes of Washington an action in form similar to the old action of ejectment may be maintained in favor of one who has a superior title, whether legal or equitable. Ballinger's Code, secs. 5500, 5508. No patent is shown to have been issued by the General Government, and the question, therefore, is whether the State obtained an equitable title by virtue of the selection and approval disclosed in the findings of fact.

The first contention of plaintiff in error is that no authority is shown for Phillip H. Lewis to act as agent for King County or the Territory of Washington in making the selection. We pass the assertion that in the brief of counsel for plaintiff in error in the state court the right of Lewis to act for the county

was conceded. It is enough that Lewis, assuming to act as agent, made the selection, and that his selection was approved by the Secretary of the Interior, for the State; the successor of the Territory, by commencing this action and claiming the benefit of his act as agent, ratified and confirmed what he did as agent. Besides, whether he had authority to so act is not a Federal question, but one whose decision by the state court is final.

Coming now to the Federal question, the approval by the Secretary of the Interior of a selection made by one claiming to be the agent of a Territory or State of land in lieu of school sections 16 and 36 is, if nothing more, in effect a withdrawal from private entry of the selected land, and such withdrawal continues until the approval of the selection is itself set aside. Whether such selection, so approved, shall afterwards ripen into a full legal title or not, is immaterial so far as the question of withdrawal is concerned. In the case at bar, at the time of the selection and approval, there was no settlement, no private right, nothing to interfere between the United States and the Territory of Washington, or prevent a selection of this tract in lieu of an ordinary school section. When, therefore, the Secretary of the Interior approved the selection, it at least operated to withdraw the land from private entry. A claim in behalf of the Territory had been presented, and that claim had been approved by the proper officer of the United States. While the land remained subject to such claim and approval, no individual could come in and question its validity. Johanson's attempt to make a homestead was wrongful and gave him no rights whatever in the land.

But, further, the title of the State is good. For the material parts of the statutes bearing upon this question see note at foot of this page.[1]

---

[1] Act of March 2, 1853, establishing the Territory of Washington, 10 Stat. 179, sec. 20; sec. 1947, Rev. Stat.:

"Sections numbered sixteen and thirty-six in each township in said Territory shall be, and the same are hereby, reserved for the purpose of being applied to common schools in said Territory. And in all cases where said sections sixteen and thirty-six, or either or any of them, shall be occupied

Now we remark that from the legislation of Congress nothing is clearer than that the policy of the Government has been a generous one in respect to grants for school purposes. *Cooper* v. *Roberts,* 18 How. 173; *Minnesota* v. *Hitchcock,* 185 U. S. 373,

by actual settlers prior to survey thereof, the county commissioners of the counties in which said sections so occupied as aforesaid are situated, be, and they are hereby, authorized to locate other lands to an equal amount in sections, or fractional sections, as the case may be, within their respective counties, in lieu of said sections so occupied."

Act of February 26, 1859, 11 Stat. 385:

" *Be it enacted by the Senate and House of Representatives of the United. States of America in Congress assembled,* That where settlements, with a view to preëmption, have been *been* made before the survey of the lands in the field which shall be found to have been made on sections sixteen or thirty-six, said sections shall be subject to the preëmption claim of such settler; and if they, or either of them, shall have been or shall be reserved or pledged for the use of schools or colleges in the State or Territory in which the lands lie, other lands of like quantity are hereby appropriated in lieu of such as may be patented by preëmptors; and other lands are also hereby appropriated to compensate deficiencies for school purposes, where said sections sixteen or thirty-six are fractional in quantity, or where one or both are wanting by reason of the township being fractional, or from any natural cause whatever: *Provided,* That the lands by this section appropriated, shall be selected and appropriated in accordance with the principles of adjustment and the provisions of the act of Congress of May twentieth, eighteen hundred and twenty-six, entitled ' An act to appropriate lands for the support of schools in certain townships and fractional townships not before provided for.' "

Section 2 of the act of Congress approved May 20, 1826, 4 Stat. 179:

" SEC. 2. *And be it further enacted,* That the aforesaid tracts of land shall be selected by the Secretary of the Treasury, out of any unappropriated public land within the land district where the township for which any tract is selected may be situated; and when so selected, shall be held by the same tenure, and upon the same terms, for the support of schools, in such township, as section number sixteen is, or may be held, in the State where such township shall be situated."

Section 10 of the act of February 22, 1889, for the admission of Washington and other Territories into the Union, 25 Stat. 679:

" That upon the admission of each of said States into the Union sections numbered sixteen and thirty-six in every township of said proposed States, and where such sections, or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress, other lands equivalent thereto, in legal subdivisions of not less than one quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said States for the support of

and cases cited in the opinion. And, as was said by Mr. Justice Field, in *Winona & St. Peter R. R. Co.* v. *Barney*, 113 U. S. 618, 625, acts making grants "are to receive such a construction as will carry out the intent of Congress, however difficult it might be to give full effect to the language used if the grants were by instruments of private conveyance. To ascertain that intent we must look to the condition of the country when the acts were passed, as well as to the purpose declared on their face, and read all parts of them together."

Tested by this rule, it is obvious that Congress intended that Washington should receive full sections 16 and 36, or, in case of a failure by reason of prior settlement or from natural causes, the equivalent of such sections, and designated the Secretary

---

common schools, such indemnity lands to be selected within said States in such manner as the legislature may provide, with the approval of the Secretary of the Interior."

32 Stat. 756. December 18, 1902.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That in all cases where sections sixteen and thirty-six, or either or any of them, or any portion thereof, have been occupied by actual settlers prior to survey thereof, and the county commissioners of the counties in which said sections so occupied as aforesaid are situated, have, under said act of Congress of March second, eighteen hundred and fifty-three, located or selected other lands in sections or fractional sections, as the case may be, within their respective counties, in lieu of said section so occupied as aforesaid, the lands so located or selected, when the same shall have been approved by the Secretary of the Interior, shall be deemed and taken to have been granted to said State by said act of February twenty-second, eighteen hundred and eighty-nine, and the title of said State thereto is hereby confirmed.

"SEC. 2. That where any lands appropriated by Congress to said Territory to compensate deficiencies for school purposes, where sections sixteen or thirty-six were fractional in quantity, or where one or both were wanting by reason of the township being fractional, or from any natural cause whatever, or where section sixteen or thirty-six were patented by preëmptors, have been selected and appropriated as provided in said act of Congress of February twenty-sixth, eighteen hundred and fifty-nine, the lands so selected and appropriated, when the same shall have been approved by the Secretary of the Interior, shall be deemed and taken to have been granted to said State of Washington by the said act of February twenty-second, eighteen hundred and eighty-nine, and the title thereto confirmed."

of the Interior as the officer to approve any selections made by the Territory.    The act of 1859 is as applicable to Washington as to any other Territory, notwithstanding that there was a special statute passed in 1853 in respect to it.    While ordinarily a special law is not repealed by a subsequent general statute, unless the intent so to do is obvious, yet there is no rule which prevents the latter from applying to cases not provided for by the former.    It is true the act of 1859 refers to the act of 1826 in reference to selections, and the act of 1826 designated the Secretary of the Treasury as the officer to select.    At that time the Land Department was under the supervision of the Secretary of the Treasury.    But by the act of March 3, 1849, 9 Stat. 395, the Interior Department was created, and the supervising powers of the Secretary of the Treasury in respect to public lands were transferred to the Secretary of the Interior.    The act of 1859 is to be taken, not as specially designating the Secretary of the Treasury as the officer to make the selections, but simply as describing the general mode of procedure in respect thereto.    This is obvious from its language, which is that the selection and appropriation shall be "in accordance with the principles of adjustment and the provisions of the act of Congress, May 20, 1826."

Further, it must be remembered that the general supervision of the affairs of the Land Department is now vested in the Secretary of the Interior, and that unless Congress clearly designates some other officer to act in respect to such matters it will be assumed that he is the officer to represent the Government.    *Bishop of Nesqually* v. *Gibbon,* 158 U. S. 155.    If some one authorized to represent the Territory of Washington made a selection, and it was approved by the Secretary of the Interior, such action, being that of the officer charged with the supervision of the landed interests of the United States, it should, unless some direction of Congress has manifestly been violated, be held to be conclusive upon the transfer of title.

But still further, it appearing that some question had been mooted as to the intent of Congress in respect to these matters the confirmatory statute of 1902 was enacted, and that obviously removes all doubt.    It confirms the title to selected lands

" when the same shall have been approved by the Secretary of the Interior." This does not refer alone to future action by the Secretary, but ratifies that which he has already done. He has approved this selection, and the act of 1902 places the title of the State beyond controversy.

For these reasons we think the judgment of the Supreme Court of Washington is right, and it is

*Affirmed.*