[L. A. No. 3144.   Department Two.—August 23, 1913.]

## BUENA VISTA LAND AND DEVELOPMENT COMPANY (a Corporation), Appellant, v, HONOLULU OIL COMPANY (a Corporation), et al., Respondents.

PUBLIC LAND — INDEMNITY LAND SELECTED BY STATE — APPROVAL OF SELECTION BY SECRETARY OF INTERIOR—LAND FOUND TO BE MINERAL AFTER SELECTION.—Under section 2275 of the United States Revised Statutes, as amended by the act of Congress of February 28, 1891, (26 Stats., p. 796), neither the state of California nor its transferee acquired any vested right in land selected by it as indemnity for losses sustained to its grant of public land for common schools, until the selection was formally approved for listing by the secretary of the interior; and if, prior to such approval, the land selected by the state as agricultural land be found to be mineral land, the secretary of the interior, under the act of Congress of July 25, 1910, (36 Stats., p. 847), has no authority to approve the selection.

APPEAL from a judgment of the Superior Court of Kern County.   J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

E. A. Meserve, Erwin W. Owen, Chase, Overton & Lyman, and Claflin & Owen, for Appellant.

Morrison, Dunne & Brobeck, Frank H. Short, George E. Whitaker, and A. E. Bolton, for Respondents.

MELVIN, J.—Defendants' demurrer to plaintiff's second amended complaint was sustained, and plaintiff refusing to amend further, judgment was entered accordingly.   From said judgment this appeal is taken.

Plaintiff asserting ownership, alleged to have been derived from the state of California, to all of section twelve, township thirty-two south, range twenty-four east, Mount Diablo base and meredian, but admitting that the corporation defendant was in possession of said section and had developed oil thereon, and that the state's title thereto was still pending, prayed that while the state indemnity selections, upon which plaintiff rested its alleged title, were at issue before the United States general land-office and the department of the interior, defendants and their agents should be restrained and enjoined from producing or removing, selling or marketing any oil from said premises.

In the complaint it is alleged, among other things, that J. E. Wible, plaintiff's predecessor in interest, made application to the state of California to purchase the property in question; that "thereafter and on or about the 17th day of October, 1906, the state of California filed in the United States local land-office at Visalia, California, four applications in writing for all of said land (one application for each quarter section thereof) as indemnity for losses sustained to its grant of public land for common schools, and paid the legal fees required upon such filings"; that after complying with all of the preliminary requirements governing such selections of lands (which are fully pleaded) the papers were transmitted by the register and receiver of the land-office at Visalia to the United States general land-office at Washington; that on May

20, 1907, and in accordance with the findings and instructions of the commissioner of the general land-office the selections were approved by the register and receiver at Visalia, and the assignments and transfers of the base land to the United States were accepted; that the selections were approved by the surveyor-general of California; that Wible paid for the land and received his certificate of purchase from the state; that in 1910 defendants entered upon the land and developed oil thereon in 1911; that in 1909 protests and contests had been filed against the state selections in the land-office at Visalia by predecessors in interest of defendants; that the protest with reference to the northeast quarter was dismissed by the general land-office for insufficiency; that the others were still pending; that the state of California had done everything necessary to entitle it to have the land confirmed and listed to it; and that the plaintiff was entitled to a patent.

The principal point of difference between counsel, which was argued in their briefs, was whether or not the mineral character of the section, discovered, as it was, after the state and its grantee had done everything in their power to perfect title to the property as agricultural land, could justify the refusal of the interior department to confirm and list the tracts in dispute to the state and to those claiming under it. At the time of the submisison of this cause in April, 1913, at Los Angeles, plaintiff and appellant was permitted to file its petition for rehearing in a matter involving the very questions before us here.   In that proceeding the interior department had held that neither the state of California nor its transferee can have any vested right in the land there in controversy until the selection is formally approved for listing by the secretary of the interior; that if the land is now known to be mineral in its character the secretary has no power to approve the selections, regardless of its supposed character at the time the said selections were made; and that under the act of June 25, 1910, known as the "Pickett Bill" (36 Stats. 847, [2 Fed. Stats. Ann. (1912) p. 821, U. S. Comp. Stats. 1911 p. 593]), the secretary of the interior would have no authority to approve the selections.   (See *State of California and Buena Vista Land and Development Co., Transferee, Petitioners, Honolulu Consolidated Oil Co., Petitioner, State of California and Buena Vista Land and Development Co.,*

*Transferee, Respondents,* Visalia, 01915 School Land Indemnity Selections.)

Since that time our attention has been called to the fact that the petition in question has been denied. Appellant does not question our right to consider the decision of the interior department, given after a hearing of the matter above mentioned, and the opinion rendered on denial of appellant's motion, but its counsel make the contention that since the same land here in controversy is not involved, we are not bound by the rulings of the interior department. Conceding this position to be correct, nevertheless we entirely agree with the reasoning of the interior department upon the matters decided, and as they are essentially the same problems presented in the case at bar, we must conclude that appellant here was not entitled to the relief demanded and that the superior court properly sustained the demurrer to the second amended complaint. The opinion of the assistant secretary of the interior, Hon. Lewis C. Laylin, on denying the petition for rehearing by the Buena Vista Land and Development Company is as follows:

"Counsel representing the state of California and the Buena Vista Land and Development Company, as transferee, on April 3, 1913, filed a petition for rehearing in the above entitled matter, in which the department, on February 27, 1913, rendered a decision adverse to the contentions of the state and said company. In connection therewith a request for oral argument was made.

"As contended by counsel in brief filed in support of the pending motion, 'the decision of this case rests entirely upon the determination of the question as to whether or not the petitioners can acquire any vested rights in the land without the approval of the selection by the secretary of the interior.'

"The claim through the state of California to the land in question rests upon a proffered school indemnity selection filed in the Visalia land-office November 17, 1906. This selection has never received the approval of the secretary of the interior, but it is claimed that the state, and its transferees have, by reason of the filing of the selection, acquired a vested interest in the land, and in this connection section 2275 of the Revised Statutes, as amended by the act of February 28, 1891

(26 Stats. 796, [6 Fed. Stats. Ann. p. 462, U. S. Comp. Stats. 1901, p. 1381]), is referred to.

"The act of February 28, 1891, amended sections 2275 and 2276 of the Revised Statutes, relating to the exchange of lands granted to the several states in aid of common schools where settlements, with a view to pre-emption or homestead, are made upon such lands before their survey in the field; where they are 'mineral land, or are included within any Indian, military, or other reservation or are otherwise disposed of by the United States'; or where they are fractional in quantity or are wanting by reason of the township being fractional, or from any natural cause whatever. Respecting any such lands the state is offered the proposition of exchange thereof for an equal quantity of other public lands of the United States, provided that the land to be taken in exchange 'shall be selected from any unappropriated surveyed public lands, not mineral in character, within the state or territory where such losses or deficiencies of school selections occur.'

"It is true, that with respect to such exchanges there is no specific requirement that the same shall receive the approval of the secretary of the interior, but in this respect it is similar to exchange authorized by the act of June 4, 1897 (30 Stats. 11, 36, [U. S. Comp. Stats. 1901, p. 3768]), wherein it was provided for relinquishment of tracts included in an unperfected *bona fide* claim or a patent within the limits of a public forest reservation and the selection in lieu thereof of vacant land opened to settlement, not exceeding in area the tract covered by the claim or patent relinquished. In the latter act there was no provision for the approval of the selection made in exchange but in the case of *Cosmos Exploration Co.* v. *Gray Eagle Oil Company,* 190 U. S. 301, 311, [47 L. Ed. 1064, 23 Sup. Ct. Rep. 692], it was said:

" 'Counsel insists that the act of June 4, 1897, constitutes a standing offer on the part of the government to exchange any of its "vacant land, open to settlement" for a similar area of patented land in a forest reservation, and that whenever a person relinquishes to the government a tract in a forest reservation and places his deed to the government of record as required by the land department rules, and selects in lieu thereof a similar area of vacant land, open to settlement, that such offer of the government has thereupon been both accepted

and fully complied with, and that a complete equitable title to the selected land is thereby vested in the selector.

" '. . . There must be a decision made somewhere regarding the rights asserted by the selector of land under the act, before a complete equitable title to the land can exist. The mere filing of papers cannot create such title. The application must comply with and conform to the statute, and the selector cannot decide the question for himself.

" 'We do not see how it can be successfully maintained that, without any decision by any official representing the government, and by merely filing the deed relinquishing to the government a tract of forest reserve land and assuming to select a similar area of vacant land open to settlement, the selector has thereby acquired a complete equitable title to the selected land. . . . Who is to decide?

" '. . . The general land-office has (so far as this record shows) come to no conclusion in regard to it.

" '. . . It is also for the land department to determine whether, if the land were not known to be mineral land at the time of the selection, the fact that mineral in paying quantities has been found since that time, will vitiate that selection. . . .

" 'What may be the decision of the land department upon these questions in this case, cannot be known, but until the various questions of law and fact have been determined by that department in favor of complainant it cannot be said that it has a complete equitable title to the land selected.'

"In the administration of the act of February 28, 1891, governing the selection of school indemnity by the several states having grants of lands in aid of common schools, it has been the uniform practice to treat selections by the several states thereunder as a mere proffer of exchange under which no title passes nor is any vested interest accrued thereunder prior to the approval of the selection by the secretary of the interior.

"Important matters must be inquired into and decided both with respect to the lands that may be made bases for the selections as well as to the character and condition of those lands sought in exchange and these must be determined ultimately by the secretary of the interior. These are all determined in favor of the state when approval is given to the selection and

not before.   (See *Johanson* v. *Washington,* 190 U. S. 179, [47 L. Ed. 1008, 23 Sup. Ct. Rep. 825].)   In this connection it may not be inappropriate to call attention to the fact that in the adjustment of the school grants the United States deals alone with the states, although equities in those claiming through the state have in some instances been recognized in disposing of the lands the selections have been canceled.   During the last session of Congress officers of the state of California were actively pressing legislation specifically recognizing the approving power of the secretary of the interior respecting these indemnity school selections.   (See H. R. 25738, 62d Congress, 2d session.)

"I do not find upon the motion any representative of the state, and it is doubtful if the officers of the state would subscribe to the contention now made.   Giving full consideration, however, to all that is said in the brief, the department is unable to agreee with the contention therein made and as no reason appears for reconsideration of the decision of the department hereinbefore rendered on February 27, 1913, it follows that the motion under consideration must be and the same is accordingly hereby denied."

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.