[No. 19040.   Department One.   February 13, 1925.]

THE STATE OF WASHINGTON, *on the Relation of B. A. Garber, Plaintiff,* v. CLARK V. SAVIDGE, *as Commissioner of Public Lands, Respondent.*[1]

COURTS (57)—MANDAMUS (70)—JURISDICTION OF SUPREME COURT. The supreme court has original jurisdiction to issue a writ of mandamus to a state officer where the matter involves the validity and constitutionality of statutes relating to important public rights, such as the constitutional trust in school lands for the benefit of the common school fund.

PUBLIC LANDS (76)—MINES AND MINERALS (1A)—SCHOOL LANDS—RIGHT TO LEASE—STATUTES—VALIDITY. The legislature had power to enact Chapter 46 of the Laws of 1917, p. 200, exempting a certain quarter section of school lands from sale or lease, except for park purposes for a limited time upon certain rental, which does not take it out of the constitutional trust for the common school fund, as such fund receives the benefit of the rental authorized by the act.

SAME. The constitutionality of Rem. Comp. Stat., §§ 10940 to 10951, as amended by Rem. 1923 Sup., § 10942, which turns over to the state park committee certain school lands leased for park purposes, will not be determined in a suit by an individual seeking an oil lease thereof, where it appears that he has no right to such oil lease.

Application filed in the supreme court December 1, 1924, for a writ of mandamus to compel the commissioner of public lands to issue a lease for the mining of oil and gas on state lands.   Denied.

*E. E. Boner,* for relator.

*The Attorney General* and *Mark H. Wight, Assistant,* for respondent.

MACKINTOSH, J.—The application for a writ of mandate asserts that the relator is a person qualified to receive a lease of state lands, and that the state is the owner and holder of the S. E. ¼ of the S. W. ¼ of

[1]Reported in 233 Pac. 946.

sec. 36, tp. 18, N. R. 10, W. W. M., which is what is commonly known as school land; that the legislature of the state, by statute, has authorized the defendant and made it his duty, as commissioner of public lands, to execute leases for the extraction of petroleum and natural gas from state lands; these acts appearing as Laws of 1901, ch. 106, p. 218; Rem. Comp. Stat., §§ 8028-39 [P. C. § 6496 *et seq.*]; that the relator, in October, 1924, having by geological survey discovered that the quarter-section referred to is adapted for the production of petroleum and natural gas, and desiring to obtain from the defendant a natural gas lease for the purpose of producing petroleum and natural gas, made application to the defendant that he issue such a lease, but that the defendant refuses the application, for the reason that the legislature in the session of 1917 passed ch. 46 (Laws of 1917, p. 200), which provided that the property here in question should be leased for public park and boulevard purposes, and should not be sold or leased except as in that act provided; and that the defendant's refusal is also based on the acts of the legislature in the session of 1921, appearing as ch. 149 (Laws of 1921, p. 558), which appears in the code as Rem. Comp. Stat., §§ 10940 to 10951, inclusive, as amended by the legislature in 1923 by ch. 157 (Laws of 1923, p. 502), which is an amendment to §§ 10942 and 10943, Rem. Comp. Stat.; these two chapters providing that these state lands might be withdrawn from sale and turned over to the board of park commissioners, who shall have the charge, care, control and supervision thereof. The relator then claims that none of the acts upon which the defendant relies are constitutional, and asks that the defendant be compelled to issue to him a petroleum and natural gas lease upon the lands described.

The defendant first objects to the court entertaining jurisdiction of the action and asks that the relator be relegated to his remedy in the superior court, relying upon the cases of *State ex rel. Ottesen v. Clausen*, 124 Wash. 389, 214 Pac. 635; *In re Emch*, 124 Wash. 401, 214 Pac. 1043; *In re Miller*, 129 Wash. 538, 225 Pac. 429. But, as we view it, this is one of those cases of which this court will take cognizance, as it involves the validity and constitutionality of statutes and relates to important public rights.

The land which the relator desires to lease is within a section numbered 36, and for that reason is "school land," which is land acquired from the Federal government by grant at the time of statehood. The state constitution refers to such land in article 9, § 3, which provides for the creation of a common school fund which shall remain permanent and irreducible, to be derived from several sources, among which are school lands, whether by their sale or lease, and providing that revenue derived from lands conveyed to the common school fund shall be exclusively applied to the common schools. Sections 1, 2, 3, 4 and 5, of article 16, of the constitution relate to school and granted lands and establish a trust in such land, saying that all public lands granted to the state are held in trust for all the people, and none of such lands, nor any interest therein, shall be disposed of except in the manner provided in the constitution. The legislature in its session of 1901 passed ch. 106 (Laws of 1901, p. 218; Rem. Comp. Stat., § 8028 *et seq.*), which gives authority to the commissioner of public lands to lease school lands for the purpose of mining and extracting petroleum and gas. It has been held that, under that act, the commissioner of public lands, upon application by a properly qualified person, has no discretion but must issue such lease. *State ex rel. Pindall v. Ross,*

55 Wash. 242, 104 Pac. 216; *State ex rel. Hall v. Savidge*, 93 Wash. 676, 161 Pac. 471; *State ex rel. McKee v. Savidge*, 108 Wash. 292, 183 Pac. 111; *State ex rel. Stetson v. Savidge*, 110 Wash. 618, 188 Pac. 923. And were this case unaffected by any other legislation, the relator would be entitled to his peremptory writ of mandate.

But we find that the question has been affected by other legislation. In 1912, the Congress of the United States, on April 24, enacted a law appearing as 37 Stats. at Large, page 90, which provides that the quarter-section here in controversy may be leased for public park purposes, under such rules and regulations and upon such terms as the state legislature may fix, "anything in the enabling act of said state to the contrary notwithstanding." As we view it, this Federal legislation has no bearing on the question before us, which is to be determined by reference to the state constitution, where the trust in the school lands is established and where its terms are set out. Whether the acts which are about to be referred to violate the constitution is the question which confronts us.

The legislature in 1917 passed chapter 46, *supra*, which refers to the quarter-section here in controversy and authorizes the commissioner of public lands to lease it for a public park and boulevard upon such terms as he may deem proper, and that during the term of the lease the land should be used only for public park and boulevard purposes; that the amount of the lease and the amount to be paid for all timber which it might be necessary or feasible to cut in order to use the land for park purposes should be ascertained by the commissioner and the amount paid to the state, which was to put it into the common school fund. Section 2 of that act provided that the quarter-section is reserved from sale "and the same shall not

be sold or leased except as herein provided." The
effect of this act was to exempt this quarter-section
from the operation of ch. 106, Laws of 1901 (§ 8028
et seq., Rem. Comp. Stat.), and it is clear that the
legislature had a right under the constitution to pro-
vide that this particular quarter-section might be
leased for one purpose and not another.

Under this act of 1917, the quarter-section still re-
mained a portion of the common school trust, and the
fund derived by virtue of the lease for park purposes
will be paid into the common school fund. This act
did not take the land and remove it from the school
lands, for it provides specifically that the commissioner
of public lands shall only lease it for a time fixed by
him and upon payment of rental also fixed by him.
There is nothing in the act which takes the land out of
the trust created by the constitution, nor diverts the
revenues to be derived from its leasing from the com-
mon school fund. The act differs in its effect in no
wise from the act of 1901 which authorizes the com-
missioner of public lands to execute a petroleum and
gas lease. Under the act of 1901, we held it was the
duty of the commissioner of public lands to execute
such leases, and if the legislature had the power in
1901 to order the leasing of school lands for petroleum
and gas purposes, it had the power in 1917 to provide
that certain of those school lands should be leased for
public park purposes. The only difference is in the
purposes for which the lease is executed. The control
which the state will continue to have and the revenue
which will be derived from the leases are to be used
the same in both instances. If the act of 1901 was
within the power of the legislature to pass and is not
in conflict with the constitution, neither is the act of
1917. The former having been sanctioned, the latter
must be. By this act of 1917, all persons who might

desire to purchase this land or to lease it for mineral development were precluded from doing so, and this, of course, applies to the relator here.

As far as the relator's right to a writ of mandate is concerned, what has already been said determines that he has no such right.

He insists, however, on the invalidity and unconstitutionality of the Laws of 1921, ch. 149, p. 558; §§ 10940-51, Rem. Comp. Stat., which provides for the turning over of these state lands to the state park committee to be used, under the direction of that committee, for public parks, and while being so used shall be "under the care, charge, control and supervision of the committee," that act further providing that all state parks subject to the provisions of the act shall be, and thereby were, set apart and dedicated as "public parks for the benefit and enjoyment of all the people of this state." It is relator's claim that this act violates the constitutional provisions hereinabove quoted that the state is merely a trustee for these lands for a specific purpose and that the lands cannot be administered for any other purpose; that by these acts the school fund is effectively deprived of all benefit of this land, whether it arises from sale or rental; that the amendatory act of 1923, ch. 157, p. 502 [Rem. 1923 Sup., § 10942], which provides that the park committee may grant concessions and impose fees upon persons using the parks and that all such fees shall be placed in the state park and parkway fund, is a further violation of the trust.

This court has always scrupulously guarded the school fund which is provided for by the constitution. *State ex rel. Heller v. Young,* 21 Wash. 391, 58 Pac. 220; *School District No. 20 v. Bryan,* 51 Wash. 498, 99 Pac. 28; *State v. Seattle,* 57 Wash. 602, 107 Pac. 827, 27 L. R. A. (N. S.) 1188. The court will continue to

do so. But, as we view it, the question whether these acts of 1921 and 1923 are unconstitutional is a question which is not before us, for the reason that, it having been determined that, by the act of 1917, the relator has no right to, nor interest in, a lease of the land in controversy, the discussion of later acts of 1921 and 1923 would be mere obiter, and until the validity of those acts is before us in a case calling for a decision thereon, we reserve our judgment.

The application for the writ is denied.

HOLCOMB, MITCHELL, MAIN, and FULLERTON, JJ., concur.