UNITED STATES of America,
Plaintiff,

v.

111.2 ACRES OF LAND, MORE OR
LESS, IN FERRY COUNTY, WASH-
INGTON, State of Washington, et al.,
Defendants.

Civ. No. 2619.

United States District Court
E. D. Washington, N. D.

April 4, 1968.

Smithmoore P. Myers, U. S. Atty., Robert M. Sweeney, Asst. U. S. Atty., Spokane, Wash., for plaintiff.

John J. O'Connell, Atty. Gen., Harold T. Hartinger, Sp. Asst. Atty. Gen., Olympia, Wash., for defendants.

## MEMORANDUM DECISION

POWELL, Chief Judge.

This is an action in eminent domain commenced on November 20, 1964 for the purpose of acquiring title to 111.2 acres of land located in Ferry County, Washington. The land was owned by the defendant State of Washington and acquired as school granted lands.

The United States Bureau of Reclamation acquired title to the lands by a declaration of taking. The lands were required for the Bureau of Reclamation Columbia Basin Project. They are located on the shores of Lake Roosevelt, the reservoir created by the back waters of Grand Coulee Dam. The lands are located in Section 16, Township 35 North, Range 37 E.W.M., Ferry County, Washington.

The Government asserts that a prior grant of an easement under a State statute, RCW 90.40.050, entitles the Government to take the land without the payment of compensation.[1]

The State's answer to the Government's claim is stated as follows:

1. That the United States can claim no estate or interest in state school lands

---

[1] 90.40.050 Reservation of needed lands—Procedure. When the notice provided for in RCW 90.40.030 shall be given to the commissioner of public lands the proper officers of the United States may file with the said commissioner a list of lands (including in the term "lands" as here used, the beds and shores of any lake, river, stream, or other waters) owned by the state, over or upon which the United State may require rights-of-way for canals, ditches or laterals or sites for reservoirs and structures therefor or appurtenant thereto, or such additional rights-of-way and quantity of land as may be required for the operation and maintenance of the completed works for the irrigation project contemplated in such notice, and the filing of such list shall constitute a reservation from the sale or other disposal by the state of such lands so described, which reservation shall, upon the completion of such works and upon the United States by its proper officers filing with the commissioner of public lands of the state a description of such lands by metes and bounds or other definite description, ripen into a grant from the state to the United States. The state, in the disposal of lands granted from the United States to the state, shall reserve for the United States rights-of-way for ditches, canals, laterals, telephone and transmission lines which may be required by the United States for the construction, operation and maintenance of irrigation works.

under RCW 90.40.050 until such time as two conditions have been met:

(a) The full market value of the estate or interest sought by the government has been ascertained; and

(b) Payment of the full market value has been made or safely secured to the State for its common school system.

2. That the obligation to ascertain and pay full market value arises independently from the land-grant provisions of the Enabling Act, §§ 10, 11, and the state constitution, art. 9, § 3; art. 16, § 1.

3. That the State is not estopped from enforcing the foregoing constitutional and Enabling Act provisions.

The trial of this case resulted in a full presentation of all issues, except the amount of compensation. Based on the evidence and the arguments and briefs this memorandum disposes of the above issues under Federal Rules of Civil Procedure—Rule 42(b).

## I. RCW 90.40.050

■ The government has not compensated nor offered to compensate the State for this easement. Thus if compensation were an implied condition precedent to a grant under RCW 90.40.050 the government would not have acquired any interest pursuant to the statute and would be required to pay for the easement it seeks. It appears that RCW 90.40.050 contemplates uncompensated grants of school land to the United States.

This section does not mention ascertainment or payment of compensation to the State. It details a process whereby notice leads to reservation and reservation ripens into grant. Were compensation a prerequisite one would expect that step to be detailed as well. The context of this section also indicates that compensation is not a prerequisite. RCW 90.40.010 gives the government eminent domain power against the State for irrigation projects. Thus to imply compensation as a condition in RCW 90.40.050 would render the section superfluous.

This irrigation chapter was drafted and urged upon the Legislature by T. A.

Noble, an employee of the United States Reclamation Service. Correspondence between Noble and his superiors in the Reclamation Service indicates that one of the purposes of proposing this legislation was to secure rights-of-way over State land for reclamation projects without compensation to the State. Noble's work stemmed from an earlier "Draft Of A State Irrigation Code" by Morris Bein, also a Reclamation Service employee. Section 60 of Bein's Code was a grant, in praesenti and without compensation, of rights-of-way over all State lands. Referring to his proposed code Bein commented that "lands required by the Reclamation Service shall be transferred to the United States without charge." (*Excerpt From Proceedings Of the Second Conference Of The Reclamation Service* 4) (undated).

This construction of RCW 90.40.050 is supported by Judge Driver's opinion in United States v. Anderson, 109 F.Supp. 755 (E.D.Wash.1953). Judge Driver concluded the last sentence of RCW 90.40.-050 constituted a grant in praesenti to the United States. The opinion does not discuss payment of compensation to the State. The circumstances of the case show that the State was compensated by Anderson, the purchaser from the State. The government had not complied with the notice and reservation steps detailed in the statute. Judge Driver held that the United States had acquired an easement by virtue of the statute when the State sold the land to defendant's predecessor in interest. A natural inference is that compensation is not a prerequisite to a grant under RCW 90.40.050.

## II. The Enabling Act.

Section 10 of the Enabling Act is a legislative grant to the states. In part, it reads:

"That upon the admission of each of said States into the Union sections numbered sixteen and thirty-six in every township of said proposed States, * * * are hereby granted to said States for the support of the common schools, * * *." Washing-

ton Enabling Act, ch. 180, § 10, 25 Stat. 679 (1889).

Section 11 of the Enabling Act provides, in part:

"The State may also, upon such terms as it may prescribe, grant such easements or rights in any of the lands granted by this Act, as may be acquired in privately owned lands through proceedings in eminent domain: *Provided, however,* That none of such lands, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, to be ascertained as may be provided by law, has been paid or safely secured to the State." Washington Enabling Act, ch. 180, § 11, 25 Stat. 679–80 (1889), as amended by Act of August 11, 1921, 42 Stat. 158, Act of May 7, 1932, 47 Stat. 150.

It is manifest, simply from reading section 11, that the State is not empowered to donate school land. The government argues, however, that the prohibition against donation does not apply to donations to the United States.

The government relies upon United States v. Wyoming, 331 U.S. 440, 448, 67 S.Ct. 1319, 1324, 91 L.Ed. 1590 (1947). That case is cited for a supposed "rule of construction" precluding the application to the United States of restrictions in enabling acts unless the United States is specifically mentioned in the restriction. The *Wyoming* decision construes a portion of the Wyoming Enabling Act which declares:

"Such land shall not be subject to preemption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

The Court faced a situation calling for application of the rule that sections sixteen and thirty-six are not granted to a state until identified by survey. Wyoming contended the quoted proviso precluded application of the general rule to its school lands. The Court noted the proviso did not mention the United States and applied the above rule. The result of the Court's decision was that before sections sixteen and thirty-six were surveyed the United States could reserve land within those sections, subsequently granting the State contiguous lands in lieu of the parcels reserved. The Court did not postulate the "rule of construction" urged by the government. The quoted proviso referred to private entry. Legislative history indicated that private entry was its sole object. The Court merely adverted to the plain meaning of the Act and the intent of Congress. The "rule" which the government urges was not a rule but a conclusion. And while that conclusion was appropriate in the *Wyoming* case, it is not appropriate in this case.

The government also relies upon Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407 (1924). It is contended that the *Ide* decision indicates the prohibition of section 11 of the Enabling Act was not intended to apply to the United States. In that case the Court discussed a Wyoming statute similar to RCW 90.40.050. But no attempt was made to reconcile the statute with the Enabling Act, which was not even mentioned in the opinion. There was no discussion in that case of the issues before this Court. The case does not support the proposition for which it is cited.

The school lands provisions of the Enabling Act further a liberal policy of school support stemming from the Ordinances of 1785 and 1787. See Johanson v. Washington, 190 U.S. 179, 23 S.Ct. 825, 47 L.Ed. 1008 (1903); Cooper v. Roberts, 59 U.S. (18 How.) 173, 15 L.Ed. 338 (1855). An integral part of this policy has been application of the principle of indemnity. In this context the principle of indemnity requires that no land or proceeds be diverted from the school trust unless the trust receives full compensation. This principle is explicitly a part of the Washington Enabling Act. Section 10 allows the United States

to reserve or dispose of school land during the interval between admission and identification of the school sections by survey. But it is also provided that the State shall be indemnified for the loss of school land by grant of equivalent land "as contiguous as may be" to the land lost. The indemnity principle, though often unexpressed, furnishes the ratio decidendi for a number of school lands decisions. e. g., Lassen v. Arizona ex rel. Arizona Highway Dept., 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967); Heydenfeldt v. Daney Gold & Silver Mining Co., 93 U.S. 634, 23 L.Ed. 995 (1876); State ex rel. Hellar v. Young, 21 Wash. 391, 58 P. 220 (1899). See also, Wash. Const., Art. IX, § 5. The construction of the Enabling Act urged by the government violates the principle of indemnity. For that reason alone it should be rejected.

▮▮▮ But the government's position also does violence to the clear language of the Enabling Act. Section 11 prohibits donations of school land. A donation to the United States falls within the terms of this prohibition.

"The Enabling Act is clear, free from even the shadow of an ambiguity. And when a statute is plain and its meaning is certain, construction has no place or office. The conclusive legal presumption is that the legislative body meant what it said, and the duty of the courts is to give effect to its acts, not to amend or repeal them." Sweet v. United States, 228 F. 421, 423 (8th Cir. 1915), rev'd on other grounds, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473 (1918).

Congress did not see fit to permit the United States to take lands without indemnity. The Court should do no less. The prohibition of section 11 is held to apply to donations to the United States.

### III. The Washington Constitution

Article XVI, section 1 of the Washington Constitution reads:

"All the public lands granted to the state are held in trust for all the people and none of such lands, nor any estate or interest therein, shall ever be disposed of unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, be paid or safely secured to the state; nor shall any lands which the state holds by grant from the United States (in any case in which the manner of disposal and minimum price are so prescribed) be disposed of except in the manner and for at least the price prescribed in the grant thereof, without the consent of the United States."

RCW 90.40.050 clearly conflicts with the first clause of this section. But the government contends that the second clause nullifies the requirement of compensation when the United States consents.

A literal reading of this section indicates the second clause is conjunctive rather than disjunctive, adding another prohibition to the full market value prohibition of the first clause. This construction is supported by the history of the section in the Constitutional Convention.

When the article on "State School and Granted Lands" was first reported out of committee, section 1 read as follows:

"All the public lands of the state are held in trust for all the people and none of such lands, nor any estate or interest therein, shall ever be disposed of unless the full market value of the estate or interests disposed of, to be ascertained in such manner as may be provided by law, be paid or safely secured to the state; provided, that the Legislature may donate to the United States such tracts of shore or other lands as may be needed by the government of the United States for establishing and maintaining defensive works, forts, arsenals, magazines, lighthouses, docks and dockyards. Provided further, that wherever such works, forts, arsenals, magazines, lighthouses, docks and dockyards are abandoned, the lands so granted shall

revert to the state. Nor shall any lands which the state holds by grant from the United States (in any case in which the manner of disposal and minimum price are so prescribed) be disposed of, except in the manner and for at least the price prescribed in the grant thereof, without the consent of the United States." Journal Of The Washington State Constitutional Convention, 1889, 386 (Rosenow ed. 1962).

With section 1 in this form the article failed at the third reading. Journal, supra, 401.

In Section 1 as first reported it is obvious that the only qualification of the declaration of trust was imposed by the provision for temporary donations to the United States. The third sentence (now the second clause) was supplementary. Evidently the third sentence was not intended to free school lands from the requirement of full compensation. It was intended to bind the State to the disposition requirements set forth in the Enabling Act unless the United States waived those requirements. Section 11 of the Enabling Act required that school lands be sold only at public sale and for no less than ten dollars per acre. Leases were permitted for no more than five years, and only one section could be leased to a person. 25 Stat. 679–80. These are the particular requirements to which it appears the third sentence of section 1 referred. When the article was next reported out of committee, the third sentence had become the second clause. But there is no reason to suppose that the conjunctive rather than disjunctive significance was intended to be changed.

The State has urged the significance of deletion of the proviso permitting grants to the United States. But the deletion is ambiguous. It could mean, as the State contends, that the idea of donations to the United States was rejected by the Convention. But granting arguendo the government's interpretation of the second clause of section 1, it could mean that the donation proviso was deemed superfluous. This opinion cannot rely upon this deletion from the article.

■ The second clause of section 1 is held to be conjunctive rather than disjunctive. It follows that the consent of the United States to a donation of school land by the State is not sufficient to free the land from the constitutional requirement of full market value compensation. This construction accords with a policy favoring judicial protection of the school lands trusts.[2]

This Court is bound to accept the Washington Supreme Court's interpretation of the State Constitution. That court has never faced the problem posed by this case. But an inference can be drawn from State ex rel. Garber v. Savidge, 132 Wash. 631, 233 P. 946 (1925) to support this Court's construction. The relator sought a writ of mandamus compelling the commissioner of public lands to execute a petroleum lease of school lands. Wash.Sess.Laws 1901, ch. 106 required the commissioner to enter into such leases. But Wash. Sess.Laws 1917, ch. 46 declared that the school land in question could only be

---

2. There has been a history of unauthorized diversion by the states of school land and proceeds. See, e. g., discussion of the "tall timber" cases, S.Rep. No. 454, 61st Cong., 2d Sess. 19–20 (1910); discussion of investment of proceeds in state bank that failed, Luckett, Mississippi's Sixteenth Section School Lands, 33 Miss. L.Q. 281, 287 (1962). Therefore it has fallen to the courts to protect the trust corpus and assure that it is devoted solely to support the common schools. See, e. g., School District No. 20, Spokane County v. Bryan, 51 Wash. 498, 99 P. 28 (1909); State ex rel. Hellar v. Young, 21 Wash. 391, 58 P. 220 (1899). A recent example of judicial protection of the school land trusts is Lassen v. Arizona ex rel. Arizona Highway Dept., 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967). The Court rejected a government contention that enhancement of remaining trust lands should be offset against the land taken for highway easements. The Court rejected this contention to insure maximum support of the trust.

leased for public parks. The Court was asked to declare the 1917 Act an unconstitutional infringement upon the school land trust. The Court held that rental payments by the state park committee obviated any constitutional question. By the Act of April 24, 1912, ch. 89, 37 Stat. 90 Congress had consented to leases of school land for public parks. The Court held that this Act did not resolve the constitutional question posed by the case. But under the theory advanced by the government now, the Court might have said that the constitutionality of using school land for public parks was immaterial, for Congress had consented. The Court's refusal to employ this approach is not determinative. But it may be inferred that the Court considered the second clause of section 1 conjunctive rather than disjunctive.

### IV. Law and Compact

The government contends the compact between the State and the United States has been altered and that the prohibitions of the Enabling Act and Washington Constitution no longer apply. A legislative grant is both compact (or contract) and law. Ordinarily it is subject to change: contracts are subject to novation, laws to amendment. See Heydenfeldt v. Daney Gold & Silver Mining Co., 10 Nev. 290 (1875), aff'd, 93 U.S. 634, 23 L.Ed. 995 (1876). Specifically, the government contends that RCW 90.40.050 embodies the consent of the State to uncompensated grants of school land to the United States. The consent of the United States is allegedly manifested by administrative practice of the Reclamation Service. This is the government's theory of the case.

In order to accept the government's theory it is necessary to proceed entirely upon contract principles, ignoring the fact that a legislative grant is also a law. The consent of the United States has not been manifested by amendment of the Enabling Act or by legislation inconsistent with section 11 of that Act.

Administrative practice cannot amend an act having the force of law. On the contrary, the very inconsistency upon which the government relies demonstrates the illegality of the Reclamation Service practices. The government adverts to Judge Driver's statement that the United States may accept "by an Act of Congress or by construction of a ditch." United States v. Anderson, 109 F.Supp. 755, 760 (E.D.Wash.1953). But Judge Driver was referring to acceptance of an interest in land, not the amendment of a statute.

■ Consent of the State is embodied in a statute. But as a general rule a statute in conflict with the constitution is unconstitutional and hence inoperative. State ex rel. Evans v. Brotherhood of Friends, 41 Wash.2d 133, 247 P.2d 787 (1952). If contract principles are employed to the exclusion of principles of legislation a contrary result may be reached. This explains the decision of Boeing Aircraft Co. v. Reconstruction Finance Corp., 25 Wash.2d 652, 171 P.2d 838, 168 A.L.R. 539 (1946).

In the Boeing case the court considered the following provisions:

"And said conventions shall provide, by ordinances irrevocable without the consent of the United States, and the people of said states:—* * * Second. That the people inhabiting said proposed states do agree and declare * * * that no taxes shall be imposed by the states on lands or property therein belonging to or which may hereafter be purchased by the United States, or reserved for its use. * * *" Enabling Act, Art. IV.

"Compact with the United States—

The following ordinance shall be irrevocable without the consent of the United States and the people of this state:—* * * that no taxes shall be imposed by the state on lands or property therein belonging to or which may be hereafter purchased by the United States, or reserved for use: * * *." Wash.Const. Article XXVI.

"Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding the value of such property, shall be exempt from taxation." Wash.Const. Amend. 14.

The Court also had before it federal and State statutes declaring Boeing property leased from the Reconstruction Finance Corporation to be taxable. The Court proceeded on contract principles and held the constitutional provisions "not compelling." But the quoted provisions clearly demonstrate that the *Boeing* case was one where contract principles were especially relevant. Thus the Court was justified in permitting the latest expression of the sovereign to govern regardless of the distinction between constitutional and statutory provisions. The present case is distinguishable. Article XVI, section 1, is not phrased as a purely contractual provision. It is phrased as law, although it has incidents of contract as well. Accordingly RCW 90.40.050 does not constitute a contractual novation. Rather, insofar as it purports to make uncompensated grants of school lands to the United States it is unconstitutional.

Section 10 of the Enabling Act and Article XVI, section 1 of the Washington Constitution constitute a declaration of trust. State ex rel. Hellar v. Young, 21 Wash. 391, 58 P. 220 (1899). The equitable interest of the public school system, the cestui que trust, has been interposed between the United States (grantor) and the State (trustee). There have been intimations that school land trusts are merely honorary, that there is a "sacred obligation imposed on (the state's) public faith," but no legal obligation. Alabama v. Schmidt, 232 U.S. 168, 173, 34 S.Ct. 301, 302, 58 L.Ed. 555 (1914); Cooper v. Roberts, 59 U.S. (18 How.) 173, 182, 15 L.Ed. 338 (1855). These intimations have been dispelled by Lassen v. Arizona ex rel. Arizona Highway Dept., 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967). This trust is real,

not illusory. A donation to the United States under RCW 90.40.050 would constitute a breach of trust which the Court will not countenance. See United States v. 78.61 Acres of Land, 265 F.Supp. 564 (D.Neb.1967).

### V. Estoppel by Judgment

The government contends the State is estopped from contesting the unconstitutionality of RCW 90.40.050 under the judgment entered in United States v. Anderson, 109 F.Supp. 755 (E.D.Wash. 1953). The State was a party to that case, but not a party in interest. The United States brought the action to condemn property held by the State's successor in interest. Apparently the State was joined only to argue the unconstitutionality of RCW 90.40.050, occupying the position of amicus curiae. The State could not appeal Judge Driver's decision. Therefore his decision is not conclusive against the State. Restatement, Judgments § 69(2) (1942).

The question of law determined in United States v. Anderson, was whether RCW 90.40.050 conflicted with Article II, section 19 of the Washington Constitution. This section commands inclusiveness in the titles of acts of the legislature. The conflict between the statute and Article XVI, section 1 was not raised. As the question of law now before the Court was not "actually litigated and determined" in the former adjudication, that adjudication is not conclusive against the State. Restatement, Judgments § 70 (1942).

It also appears that injustice would result if the State were not permitted to challenge RCW 90.40.050. Though Judge Driver's decision would bind the State, it would not bind others, and different results would be reached on the same facts. It would be especially inequitable to let the government claim an estoppel, although under the shield of this statute the government has constructed irrigation works. RCW 90.40.050 was drafted by agents of the United States. The informal opinion of constitutionality upon which all have heretofore relied was

written by B. H. Stoutemyer, district counsel for the Reclamation Service.[3] In short, the government's carelessness has cost the State a good deal of money which it will never recover. See Restatement, Judgments § 70 (1942); § 70 comment (f) (1948 Supp.).

## VI. Estoppel in Pais

Finally the government contends that the State has waived compensation and is estopped from requiring compliance with its Constitution and the Enabling Act.

 An effective waiver implies knowledge of the pertinent facts. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). The pertinent fact in this case is the invalidity of an uncompensated grant to the United States of school land under the statute. Manifestly the State did not know its statute was invalid in this respect. Nor should the State be required to anticipate a ruling of this Court which upsets a statute enacted more than fifty years ago. See Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). The same rationale applies to the government's claim of estoppel. One with equal or superior knowledge of the facts cannot claim an estoppel. Gaylord v. C.I.R., 153 F.2d 408 (9th Cir. 1946).

To find an estoppel in this case would permit the government to frustrate its own public policy of support of the common schools of the states. "For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest." Scott Paper Co. v. Marcalus Manufacturing Co. Inc., 326 U.S. 249,

257, 66 S.Ct. 101, 105, 90 L.Ed. 47 (1945). Accord, King Co. Employee's Ass'n v. State Employees' Retirement Bd., 54 Wash.2d 1, 336 P.2d 387 (1959).

The United States will be required to pay the full market value of the easement it has condemned. This opinion will constitute the Findings of Fact and Conclusions of Law under Fed.R.Civ.P. 52(a).

The State is requested to submit judgment.

---

**3.** "Stoutemyer concluded that RCW 90.-40.050 was constitutional because the easement acquired by the United States was not a significant enough interest in the land for its donation to contravene the constitution. He relied upon cases construing prohibitions against disposition of the land. His analysis has been confirmed in states with less stringent

constitutional provisions. See, e. g., United States v. Fuller, 20 F.Supp. 839 (D.Idaho 1937). Apparently he did not appreciate the language of the Washington Constitution which applies the prohibition against donations to 'such lands, (and) any estate or interest therein.' " Wash.Const. Art. XVI, § 1.