[No. 30962.  *En Banc.*  June 3, 1949.]

CAROLINE I. RANDLES, *Appellant*, v. WASHINGTON STATE LIQUOR CONTROL BOARD, *et al., Respondents*, WASHINGTON STATE DISPENSERS, INC., *et al, Appellants.*[1]

[1]Reported in 206 P. (2d) 1209.

*Brodie & Brodie* and *Kennett & McCutcheon,* for appellants.

*The Attorney General* and *Joseph P. Lavin, Assistant,* for respondents.

*McMicken, Rupp & Schweppe* and *Mary Ellen Krug, amici curiae.*

GRADY, J.—This action was brought by Caroline I. Randles against the Washington state liquor control board and its members to enjoin the enforcement of initiative No. 171, enacted by the voters at the general election held November 2, 1948, on the ground the act is unconstitutional. The Washington State Dispensers, Inc., and its officers and board members were allowed to intervene in the action. Their complaint follows the general pattern of the amended com-

plaint, and they seek substantially the same relief. The attorney general filed demurrers to both complaints, the two principal grounds beings that neither the plaintiff nor the interveners had the legal capacity to maintain their suits and the complaints did not state facts sufficient to constitute causes of action. The court entered a general order sustaining the demurrers. The plaintiff and interveners refused to plead further, and by the same order the action was dismissed with prejudice. This appeal has been taken by the plaintiff and interveners.

The appellants contend that initiative No. 171 is invalid and unconstitutional because (a) the secretary of state did not transmit by mail to each voter in the state a copy of the pamphlet for voters within the time prescribed by statute; (b) the ballot title and the act title are defective; (c) Section 5 of the act is discriminatory in that a class H licensee may purchase any spirituous liquor item saleable under such license from the board at a discount of not less than fifteen per cent from the retail price fixed by the board, together with all taxes; (d) the act provides that class H licenses shall be granted upon the basis of the last available Federal census; (e) no standard to be followed by the liquor control board in the allocation of class H licenses is fixed by the act; (f) the act excludes from eligibility for class H licenses operators of those restaurants in which only fry orders or such food as sandwiches, hamburgers, or salads might be served; (g) the act is discriminatory in that class H licensees are prohibited from selling liquor to women, except when seated at tables, when no such restriction is made with respect to the sale of liquor to men.

Initiative measure No. 171 is chapter 5 of the Laws of 1949 and is amendatory of and supplemental to Rem. Rev. Stat. (Sup.), § 7306-1 [P.P.C. § 678-1] *et seq.*, as amended by Rem. Supp. 1941, § 7306-23M [P.P.C. § 678-163] *et seq.*, known as the Washington state liquor act. We shall refer to the former as initiative 171 and the latter as the act of 1933.

The substance of initiative 171, in so far as is necessary to a discussion of the questions before the court, is as follows:

The Washington state liquor control board, hereinafter referred to as the board, is authorized to issue licenses for the sale of beer, wine, and spirituous liquor by the individual glass, and beer and wine by the open bottle, at retail for consumption on the premises, including mixed drinks and cocktails compounded or mixed on the premises only. The licenses are designated as class H and may be issued only to bona fide restaurants, hotels, and clubs, to dining, club, and buffet cars on passenger trains, to dining places on passenger boats and airplanes, and to such other establishments operated and maintained primarily for the benefit of tourists, vacationers, and travelers as the board shall determine are qualified to have, and in the discretion of the board should have, a class H license under the provisions and limitations of initiative 171. The total number of class H licenses issued cannot in the aggregate at any time exceed one license for each 1500 of population in the state determined according to the last available Federal census. Each licensee shall be entitled to purchase any spirituous liquor items saleable under such class H license from the board at a discount of not less than fifteen per cent from the retail price fixed by the board, together with all taxes. No class H licensee is permitted to sell liquor to women, except when seated at tables.

The respondents have challenged the capacity of appellants to maintain this action. The power of the board has been questioned. Privileges under initiative 171 are now being exercised by licensees. Because of the interests of the general public as well as those directly affected by initiative 171 and of the conclusions we have reached upon the constitutional questions raised, we shall assume, without deciding or intimating any opinion thereon, that appellants are entitled to maintain an action of the kind set forth in their complaints.

We shall discuss the questions raised in the order above enumerated.

(a) The seventh amendment to the constitution, providing for the enactment of legislation by the initiative, contains the following paragraph:

"The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the constitution referred to the people with arguments for and against the laws and amendments so referred, so that each voter of the state shall receive the publication at least fifty days before the election at which they are to be voted upon."

Pursuant to this mandate, the legislature enacted chapter 138 of the Laws of 1913, providing for the printing in pamphlet form of the information contemplated by the amendment, §§ 27 and 29 of which (Rem. Rev. Stat. §§ 5423 and 5425 [P.P.C. §§ 639-47, -49]) read respectively in part as follows:

"At least sixty days prior to any election at which any initiative or referendum measure is to be submitted to the people, the secretary of state shall cause to be printed in pamphlet form a true copy of the serial designation and number, the ballot title, the legislative title, the full text of and the argument for and arguments against each such measure, including amendments to the Constitution proposed by the legislature, to be submitted to the people in the foregoing order, and shall cause all of such measures to be printed and bound in a single pamphlet. . . ."

"Not less than fifty-five days before any election at which initiative or referendum measures are to be submitted to the people, the secretary of state shall transmit, by mail with postage fully prepaid, to every voter in the state whose address he has, or can with reasonable diligence ascertain, one copy of the pamphlet hereinabove provided for, . . ."

It is alleged in the amended petition, and admitted by the demurrers, that the secretary of state did not transmit by mail not less than fifty-five days prior to November 2, 1948, a pamphlet in compliance with the foregoing provisions of the statute, and as a result the voters were not able to receive such pamphlet at least fifty days before the election at which the initiative was to be voted upon. This same question was before this court in *Gottstein v. Lister*, 88 Wash. 462, 153 Pac. 595, Ann. Cas. 1917D, 1008. The court met the problem by stating that the official records relating to the submission of the initiative, and of which the court would take judicial notice, pointed unerringly to the due submission of the enactment; that the court knew judicially that

the measure was initiated by petition; that it was submitted to and voted upon by the people at the general election; that it was approved by a majority of the electors voting upon the measure; that the canvass of the election returns showed this result, and thereafter the governor, pursuant to statute, issued his proclamation proclaiming such result to the people of the state. The court then concluded by saying:

"We are of the opinion that due publication of initiative measure No. 3, prior to the election of 1914, at which it was voted upon, must now be conclusively presumed to have been made as the constitution and statute require, and that it has not failed of lawful adoption because of want of such publicity."

The opinion of the court upon this question and the authorities cited indicate that the basis of indulging in a conclusive presumption is that, when a self-executing constitutional provision provides that a measure initiated by the people or referred to them shall take effect and become the law if it is approved by the required number of votes cast thereon, the courts are not called upon, and it is not their province, to supervise and direct the action of the legislative department of government in the process of making laws, and that its records will import absolute verity and the courts are precluded from going beyond such records to impeach them. If such a rule is not adopted and followed, then laws enacted by the law-making bodies are open to scrutiny by the courts to see if every official having any duty to perform in the course of the enactment of the statute did as directed; and if it is found he failed in any respect, the courts must approve his frustration of the will of the people or the legislature. This would enable a careless, inefficient, or corrupt official to nullify legislation by his inaction in the performance of some ministerial duty. We think, initiative 171 having been adopted and proclaimed to have been enacted, the court must conclusively presume that the secretary of state complied with the law with reference to the timely mailing of the pamphlets prepared in connection with the submission of initiative 171 to the people, and that the admissions to the contrary made by

the demurrers of respondents cannot be considered by the court.

The other subdivisions into which we have divided the claims of appellants must be considered in the light of a few recognized legal principles with reference to the sale and disposal of intoxicating liquors. There is no natural or constitutional right to sell or engage in the business of selling or dispensing intoxicating liquor. The state, under its police power, may prohibit entirely the carrying on of such business and may regulate it in such a manner as may be deemed advisable. The times when, the places where, and the persons to whom it may be sold, may be determined by the state. The privilege of dispensing intoxicating liquor may be given to some and denied to others. In considering claims of discrimination and the denial of alleged rights, the distinction between a lawful business which a citizen has the right to engage in and one in which he may engage only as a matter of grace of the state must be constantly in mind.

There is such a vast field of authority on the subject that we shall content ourselves with citing a few of the cases decided by this court and leading cases decided by the United States supreme court, such as *Tacoma v. Keisel,* 68 Wash. 685, 124 Pac. 137, 40 L. R. A. (N.S.) 757; *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560; *State ex rel. Thornbury v. Gregory,* 191 Wash. 70, 70 P. (2d) 788; *State v. Lake City Bowlers' Club,* 26 Wn. (2d) 292, 173 P. (2d) 783; *Crowley v. Christensen,* 137 U. S. 86, 34 L. Ed. 620, 11 S. Ct. 13; *Cronin v. Adams,* 192 U. S. 108, 48 L. Ed. 365, 24 S. Ct. 219; see, also chapter II, entitled "Control of Intoxicants and Traffic," subdivisions A, B and C of 30 Am. Jur. 260-285, where a full discussion of the subject of the police power and constitutional aspects may be found.

(b) and (c) The appellants claim the act and ballot titles are defective in that they make no reference to taxes or discounts, while in the body of the act such subjects are legislated upon; also that the act discriminates in favor of holders of class H licenses, in that they may purchase liquor at a discount and also have the benefit of a dis-

count upon and in effect receive a remission of liquor taxes. Our examination of the titles convinces us that they both relate to the control and regulation of intoxicating liquors when dispensed by class H license holders, and the body of the legislation is devoted wholly to that subject. The only reference made to taxes is that each class H licensee may purchase spirituous liquor from the board at a discount of not less than fifteen per cent from the retail price, plus all applicable taxes. The taxes become in effect a part of the purchase price.

A title does not need to be an index to the contents of a measure. The purpose of a title is to call attention to the subject matter of the act, so that anyone reading it may know what matter is being legislated upon, and is sufficient when it is broad enough to accomplish that purpose. All incidentals germane to a title may be brought within the legislation although not specifically referred to in such title. The following are a few of the many cases we have thus decided: *State ex rel Zent v. Nichols,* 50 Wash. 508, 97 Pac. 728; *Finos v. Netherlands American Mortgage Bank,* 147 Wash. 86, 265 Pac. 167; *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998.

We have never departed from the rules pronounced in the foregoing cases. A title with reference to the regulation and control of the sale of intoxicating liquors by the drink does not need to have mentioned therein the price the licensee must pay to the state for the liquor he is licensed to sell, nor how that price is made up or arrived at. We find no merit in the claim that the act is discriminatory in the respects urged. It is well settled that a state in dispensing intoxicating liquor to licensees may fix prices as between different classes of licensees without being subjected to a charge of unlawful discrimination.

■ (d) Section 3, subd. 5, provides:

"The total number of Class H licenses issued in the State of Washington by the Board shall not in the aggregate at any time exceed one (1) license for each 1,500 of population in the state, determined according to the last available Federal census."

We do not understand that any claim is being made that the state does not have the right to limit the number of class H licenses which may be issued, but the argument of appellants seems to be that, inasmuch as the last available Federal census is that of 1940, and it being a well-known fact that since that time many communities in the state have had large increases to their population, the standard adopted bears no reasonable relationship to the present state of population.

The appellant has favored us with no citation of authority on this particular point, nor have we been able to find any by independent research. The state having the power to prohibit the dispensing of intoxicating liquors entirely, it necessarily follows that it may limit the number of licenses to be issued, and no constitutional right of anyone is thereby infringed upon or affected.

■ (e) The appellants complain that initiative 171 fails to fix any standard to be followed by the board in the allocation of class H licenses, and that such failure amounts to an unlawful delegation of legislative authority to the board, in that it is furnished with no guide in determining to whom, and under what conditions, such licenses are to be issued, nor the maximum amount of discount to be given to class H licensees. The claimed absence of a standard and vesting in the board the authority to exercise its own discretion in granting or withholding of class H licenses and determining the amount of discount to be granted to class H licensees as affecting the validity of initiative 171, is based upon such cases as *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109; *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845, 12 A. L. R. 1428; *Uhden, Inc. v. Greenough,* 181 Wash. 412, 43 P. (2d) 983, 98 A. L. R. 1181.

In applying the rules of law pronounced in those cases, we had before us classes of business in which those so engaged had a right to do so subject only to the lawful exercise of the police power of the state, as distinguished from a business the operation of which might be prohibited entirely. The appellants recognize this distinction, but argue that, without any standard being fixed, the board might

grant a license on the sole ground of individual favoritism or animosity on the part of its members.

The appellants are not before the court claiming they have been denied a license because of partisan considerations, race prejudice, special individual favoritism, or personal animosities, and we are not now called upon to decide whether the lack of a standard to guide the action of the board and thus prevent such discriminations might constitute a deficiency in initiative 171. The applicable rules guiding governing authority are found in 30 Am. Jur. (Intoxicating Liquors) §§ 121, 122. The gist of the argument made by appellants is that for initiative 171 to be valid it should have prescribed some standard or rule to guide the board in the selection of the limited number of applicants to be granted class H licenses and the conditions under which it might deny applications for such licenses.

The act of 1933 and initiative 171 require that a licensee must be a citizen of the United States, a resident in the state of Washington for at least one year prior to making application for a license, a person not having been convicted of a felony within five years prior thereto or the violation of any Federal or state law concerning the manufacture, possession, or sale of alcoholic liquor subsequent to the passage of the act of 1933, and that class H licensees be the bona fide operators of restaurants, hotels, and clubs, or a dining, club, or buffet car in a passenger train, or dining places on passenger boats and airplanes, or the operator of some other establishment operated and maintained primarily for the benefit of tourists, vacationers and travelers. We are of the opinion that, if it can be said that the standard referred to by appellants is required at all for the validity of initiative 171, a sufficient standard has been provided to guide the board in the issuance of licenses to dispense intoxicating liquor. In the discussion of this subject in *Kelleher v. Minshull*, 11 Wn. (2d) 380, 119 P. (2d) 302, we said:

"It is not always necessary that statutes and ordinances prescribe a specific rule of action. This is particularly true in those situations where it is difficult or impracticable to declare a definite, comprehensive rule, or where the discre-

tion to be exercised by an administrative officer relates to a regulation imposed for the protection of public morals, health, safety, and general welfare."

■ (f) The appellants claim that initiative 171 discriminates in favor of the operator of a restaurant as that term is defined and limited therein, in that the operator of what is referred to as a "short order" restaurant is not eligible to secure a class H license. Again bearing in mind the plenary power of the state over the dispensing of intoxicating liquor and its authority to make such classifications as it deems proper as to the places where such intoxicating liquors may be dispensed and consumed, we are of the opinion that the distinction made in the definition of the term "restaurant" is one the lawmakers might lawfully draw. If the citation of adjudicated authority is deemed necessary, we refer to *Guillara v. Liquor Control Comm.*, 121 Conn. 441, 185 Atl. 398, 105 A. L. R. 563; *Berger v. Quinn*, 149 Misc. 545, 268 N. Y. S. 514. The courts in those cases have given what we deem sufficient reasons for classifying those to whom such a license as a class H license should be issued.

■ (g) The appellants complain that initiative 171 is discriminatory in that it forbids the sale of liquor to women except when seated at tables. Many statutes and municipal ordinances may be found whereby the sale of intoxicating liquor to women was prohibited, forbidding women acting as bartenders and otherwise singling them out as a class where intoxicating liquors were involved. *State v. Considine*, 16 Wash. 358, 47 Pac. 755; *Adams v. Cronin*, 29 Colo. 488, 69 Pac. 590, 63 L. R. A. 61; *Cronin v. Adams*, 192 U. S. 108, 48 L. Ed. 365, 24 S. Ct. 219. The requirement of initiative 171 that intoxicating liquor may be dispensed to women only when they are seated violates no constitutional right of either the licensee or the women and is a regulation that was within the power of the state to make.

We find that initiative 171 was legally enacted and that

no constitutional rights of appellants have been violated or denied to them.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, ROBINSON, and SCHWELLEN-BACH, JJ., concur.

HILL and SIMPSON, JJ., concur in the result.

