**UNITED STATES v. ANDERSON et al.**

**No. 810.**

United States District Court
E. D. Washington, Northern Division.
Jan. 29, 1953.

Hart Snyder, Special Asst. to Atty. Gen., Spokane, Wash., Paul Lemargie, Asst. Regional Counsel, Bureau of Reclamation, Ephrata, Wash., for the United States.

E. P. Donnelly, Asst. Atty. Gen., Olympia, Wash., Clifford O. Moe, Asst. Atty. Gen., for defendant State of Washington.

Felix Rea, Ephrata, Wash., for defendants Ben Harvill, and others.

DRIVER, Chief Judge.

In the process of construction of the Columbia Basin Reclamation Project, the United States, as petitioner, brought this action to condemn a right-of-way for an irrigation canal. The petition alleged that the government had a right-of-way, granted by a statute of the State of Washington, over tracts 4, 6, and 8, described in the petition, and, therefore, that the owners of such tracts were not entitled to receive any compensation for the taking. The owners appeared and claimed compensation. The issue thus raised was tried separately before the court, without a jury.[1]

There is no dispute as to the facts. Tracts 4, 6, and 8 are in a section sixteen which, under the enabling act,[2] became the property of the state of Washington upon its admission to the union, on November 11, 1889.[3] The lands were sold by the state by a contract, issued on October 26, 1906, and title passed by deed, on February 25, 1908, to an individual grantee, through whom the present owners have derived their titles. The deed did not mention any reservation of rights-of-way for the United States. The statutory reservation, upon which petitioner relies, became effective on March 4, 1905. It is set forth in the last sentence of section 5, of chapter 88, Laws of Washington, 1905, which reads:

"The State, in the disposal of lands granted from the United States to the State, shall reserve for the United States rights-of-way for ditches, canals, laterals, telephone and transmission lines which may be required by the United States for the construction, operation and maintenance of irrigation works."[4]

---

1. See Federal Rules of Civil Procedure, rules 42(b) and 71A(h), 28 U.S.C.A.

2. 25 Stat. 676.

3. 26 Stat. 1552.

4. The portions of chapter 88, Laws of Washington, 1905, which we think are pertinent here, with the corresponding code section numbers of Remington's revised statutes and revised code of Washington, are as follows:

"Sec. 3. (Rem.Rev.Stat. 7410; R.C.W. 90.40.030). Whenever the Secretary of the Interior of the United States, or any officer of the United States duly authorized, shall notify the commissioner of public lands of this State that pursuant to the provisions of the act of Congress approved June 17, 1902, entitled, 'An act appropriating the receipts from the sale and disposal of public lands in certain states and territories to the construction of irrigation works for the reclamation of arid lands,' or any amendment of said act or substitute therefor, the United States intends to make examinations or surveys for the utilization of certain specified waters, the waters so described shall not thereafter be subject to appropriation under any law of this State for a period of one year from and after the date of the receipt of such notice by such commissioner of public lands; but such notice shall not in any wise affect the appropriation of any water theretofore in good faith initiated under any law of this State, but such appropriation may be completed in accordance with the law

▮ The crux of the controversy is the construction to be placed upon the statutory provision just quoted. Petitioner argues that it constitutes a legislative grant to the United States of rights-of-way, which takes effect as the lands covered by the grant are disposed of by the state, and that such rights are not extinguished by conveyance of the lands to private grantees, without express reservation in the instrument of conveyance. Defendants, on the other hand, contend that the provision does not constitute a present or immediate grant, but is in the nature of a continuing offer of a grant, which does not take effect until the United States takes the steps specified in the other portions of the act, set out in footnote[4], to acquire rights-of-way for the construction of a particular irrigation project. They say that, construed in context with such other parts of the act, the provision means only that, if the United States, while the lands are still in state ownership, takes such prescribed steps, then it becomes the duty of the state, on subsequent disposition of the lands, to reserve rights-of-way for the United States. It follows, according to their view, that, in the present case, since the Columbia Basin Project was not initiated until long after conveyance of the lands by the state, the conveyance extinguished the inchoate grant of the rights-of-way. The intent of the legislature should be decisive as to which of the opposing views should prevail, but such intent is not apparent from the language of the act. The statute is ambiguous and, therefore, resort may be had to extrinsic aids, such as consideration of the historical setting in which the act was passed, the purposes it was designed to accomplish, and its legislative history.[5] The material for such extrinsic aids is available in the pres-

in the same manner and to the same extent as though such notice had not been given. * * *

"Sec. 5. (Rem.Rev.Stat. 7412; R.C.W. 90.40.050). When the notice provided for in section 3 of this act shall be given to the commissioner of public lands the proper officers of the United States may file with the said commissioner a list of lands (including in the term 'lands' as here used, the beds and shores of any lake, river, stream, or other waters) owned by the State, over or upon which the United States may require rights-of-way for canals, ditches or laterals or sites for reservoirs and structures therefor or appurtenant thereto, or such additional rights-of-way and quantity of land as may be required for the operation and maintenance of the completed works for the irrigation project contemplated in such notice, and the filing of such list shall constitute a reservation from the sale or other disposal by the State of such lands so described, which reservation shall, upon the completion of such works and upon the United States by its proper officers filing with the commissioner of public lands of the State a description of such lands by metes and bounds or other definite description, ripen into a grant from the State to the United States. The State, in the disposal of lands granted from the United States to the State, shall reserve for the United States rights-of-way for ditches, canals, laterals, tele-

phone and transmission lines which may be required by the United States for the construction, operation and maintenance of irrigation works.

"Sec. 6. (Rem.Rev.Stat. 7413; R.C.W. 90.40.060). After the receipt by the commissioner of public lands of the notice from the Secretary of the Interior or other officer of the United States provided for in section 3 of this act, no lands belonging to the State, susceptible of irrigation and within the area to be irrigated from the works projected by the United States and specified in such notice shall be sold except in conformity to the classification of farm units by the United States, and the title to such lands shall not pass from the State until the applicant therefor shall have fully complied with the provisions of the laws of the United States and the regulations thereunder concerning the acquisition of the right to use water from such works and shall produce the evidence thereof duly issued: * * *."

5. Ayers v. Tacoma, 6 Wash.2d 545, 557, 108 P.2d 348; Lynch v. Department Of Labor And Industries, 19 Wash.2d 802, 806, 809, 145 P.2d 265; Sullivan v. City of Butte, 65 Mont. 495, 211 P. 301; United States v. Union Pacific Railroad Company, 91 U.S. 72, 23 L.Ed. 224; Woodward v. De Graffenried, 238 U.S. 284, 35 S.Ct. 764, 59 L.Ed. 1310; United States v. St. Paul, Minneapolis & Manitoba Railway Company, 247 U.S. 310, 38 S.Ct. 525, 62 L.Ed. 1130; Helvering v.

ent case, not only in official state records, of which the court may take judicial notice, but also in contemporaneous documents, introduced in evidence by the petitioner.

In February, 1904, at the suggestion of the United States Reclamation Service (then under the United States Geological Survey), the governor of the state of Washington appointed an irrigation commission to make a study and recommend needed changes in the state irrigation laws. The commission advised with, and in a number of its meetings was addressed by, representatives of the reclamation service. A consulting attorney of the service, Mr. Morris Bien, furnished the commission a draft of a proposed irrigation code. The draft contained the following right-of-way provision:

"Sec. 60. Right of way over state lands—There is hereby granted, over all the lands now or hereafter belonging to the state, a right of way for ditches or canals constructed by authority of the United States. All transfers of state lands hereafter made shall contain a reservation of such right-of-way."

The irrigation commission, in its report to the governor, submitted, in December, 1904, recommended passage of an irrigation bill. The proposed bill did not adopt Mr. Bien's right-of-way provision, but, instead, contained the following right-of-way section:

"Sec. 71. Right-of-way over state lands.—When notice is given to the state engineer under section 59 of this act, the proper officers of the United States may file with the state land commissioner a list of lands owned by the state over which the government may require a right-of-way for canals or ditches of such irrigation project, and the filing of such list shall constitute a reservation by the state of such rights-of-way over such lands, which reservation shall ripen into a grant of such right-of-way upon

completion of such canals or ditches over any land described in said list."

It should be noted that, although the foregoing section 71 provided for acquisition by the United States of rights-of-way over lands owned by the state at the time of the initiation of an irrigation project, it contained no provision such as the last sentence of section 5, chapter 88, Laws of Washington, 1905, set out in footnote[4], for the reservation of rights-of-way upon the conveyance of state lands to private grantees.

In his message to the legislature, in January, 1905, the governor directed attention to what he called "A subject of very great importance to the state," namely, irrigation. He pointed out that, under the reclamation act of June 17, 1902, congress had made provision to set aside as a special fund the receipts from the sale of public lands in thirteen western states, including Washington, which fund was to be used to construct irrigation works for the reclamation of arid lands within the states. 43 U.S.C.A. § 391. It seemed to be the intent of the act, he said, to expend, in each state, the money derived from the sale of public lands in that state, and that Washington had contributed about three and one-half million dollars to the fund. No one doubted that there were feasible irrigation projects in the state, from an engineering standpoint; but "our laws are not such as to warrant those in charge of the reclamation service in undertaking to carry out such projects". Therefore, the governor concluded, "in the final analysis," it depended upon "the action of this legislature" whether the money constributed to the reclamation fund by the state was to be expended in the state. He said that it had been suggested to him by officials of the United States Reclamation Service that Washington irrigation laws should be revised and that he had, accordingly, appointed an irrigation commission to study the problem and recommend needed changes. He invited the legislators to

Griffiths, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843.

4. See note 4 on page 756.

give their "Most careful attention" to the commission's report, which he said would be submitted to them.

Shortly after delivery of the governor's message, the proposal of the irrigation commission, was introduced in the legislature in the form of twin house and senate bills. Later in the session, two representatives of the reclamation service, who were then in Olympia, reported to their chief engineer, in Washington, D. C., that considerable opposition to the irrigation bill had developed and that it was not likely to pass. They suggested that the provisions deemed necessary to facilitate the reclamation work of the government be incorporated in a separate measure, and they forwarded a draft of their proposed bill. The chief engineer approved the procedure, but, in a telegram, suggested that there should be included in the draft a provision for "right-of-way for telephone and transmission lines" and that "All conveyances state lands should contain right-of-way reservation as in original code". The telegram was followed by an explanatory letter. Five days later, on February 20, 1905, the chief engineer was informed by letter, by his subordinates in Olympia, that the proposed separate bill had been revised in accordance with his telegraphic suggestions, and a copy of the revised bill was mailed to him. The concluding clause of section 5 of the revised separate bill was as follows:

"Provided, that the state in the disposal of lands granted from the United States to the state shall reserve for the United States, right-of-way for ditches, canals, laterals, telephone and transmission lines which may be required by the United States in construction, operation and maintenance of irrigation works."

The separate bill, drafted by the reclamation service, was introduced in the House and in the Senate as a substitute for the irrigation commission's bill, with the clause quoted above at the end of section 5, except that, by the deletion of the words "provided that," the proviso was converted to a separate sentence. The substitute bill was then enacted into law without sub-

stantial amendment. On the same day that it was approved by the governor, March 4, 1905, the legislature passed a joint memorial, directed to the Senate and House of Representatives of the United States, urging that the Okanogan Irrigation Project of the state of Washington be approved. On December 2, 1905, the Okanogan Project was given final approval by the Secretary of the Interior. Two other Washington state projects, the Sunnyside and the Tieton, were approved on March 27, 1906. All three projects were constructed by the reclamation service.

It thus appears that, in order for the state to receive the benefits of the federal reclamation act, it was necessary for the state legislature to enact irrigation laws acceptable to the United States Reclamation Service. An irrigation bill formulated by the governor's irrigation commission and introduced in the legislature upon the recommendation of the governor, was not acceptable to the reclamation service, for the reason that it failed to provide for the reservation of rights-of-way for ditches and canals for federal irrigation projects over lands sold by the state. The reclamation service, in all its dealings with the state authorities, prior to the enactment of chapter 88, Laws of Washington, 1905, insisted upon such a provision. The last sentence of section 5, which is the subject of the present controversy, had its origin in a substitute bill, prepared by the reclamation service and enacted by the legislature to meet the requirements of the service. Surely, it should be assumed that the legislature, in good faith, intended to give what the reclamation service required, namely, present rights-of-way in all lands then owned by the state, to take effect when the state disposed of the land. It would seem to have been the conclusion of all concerned that the requirements had been met, as the reclamation service promptly proceeded with the investigation, approval, and construction of three irrigation projects within the state.

Defendants point out that no common words of grant appear in the provision of the statute relating to lands disposed of by the state, but only a direction that

the state shall "reserve" rights-of-way for the United States. They argue that the language employed is insufficient to constitute a present grant. The answer to the argument, we think, is that we are dealing with a law, not a deed—with a public grant in furtherance of public policy, rather than a private conveyance made to serve private ends. Here, the controlling factor is the intent of the legislature, and that intent need not be expressed in the language of common law conveyancing.[6]

The Washington State Supreme Court has never had occasion to pass upon the statute under consideration, and we do not know of any federal court decision in which it has been construed. The United States Supreme Court, in Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 184, 68 L.Ed. 407, was called upon to construe a Wyoming statute, Laws 1905, c. 85, which granted rights-of-way over all lands of the state for ditches constructed by the federal government and specified that all conveyances by the state should contain "a reservation for rights-of-way" for such ditches. There, state lands had been conveyed to a private purchaser, and the court held that the grant of the right-of-way to the United States had not been extinguished and that the private grantee took title subject thereto. In that case, however, the patent by which the state conveyed the land contained a clause to the effect that title was transferred, subject to all rights-of-way reserved to the United States.

The Tenth Circuit Court of Appeals, in United States v. Pruden, 10 Cir., 172 F.2d 503, 506, had before it a statute and a factual situation quite similar to the ones presented in the instant case. There, an Oklahoma statute, 82 O.S.1941 § 92, granted rights-of-way to the United States in lands of the state and provided that the conveyances of state lands should contain a reservation of such rights-of-way. The state had sold a tract of school land to a private purchaser, without reserving any right-of-way for the United States in the instruments of conveyance. The United States, in the course of construction of a reclamation project, required a right-of-way for a ditch across the property and brought a declaratory judgment action to establish its right. The court held that the Oklahoma statute did not constitute a present, absolute grant of a right-of-way, but, rather, one which did not become effective until it was accepted by the United States "by an Act of Congress or by the construction of a ditch", and that one who acquired the land from the state prior to such acceptance did not hold subject to the right-of-way.

With deference to the court which decided it, we feel that we should not follow the Pruden case in construing the Washington statute. There, the court did not consider, or at least did not discuss in its opinion, the background or legislative history of the Oklahoma statute (except to point out that it originated as a territorial act), while here, as we have pointed out, we find the background and legislative history of the Washington statute very persuasive as to the legislative intent.

In United States v. Pruden, moreover, the court based its decision upon a single ground, namely, the construction placed upon what it regarded as an analogous federal statute, section 2477 of the Revised Statutes, section 932 of title 43, U.S.C.A., by the courts generally and, particularly, by the supreme court of Oklahoma. The statute is very short, and we quote it in full as follows: "The right of way for the construction of highways over public lands, not reserved for public uses, is

---

6. Missouri, Kansas, & Texas Railway Company v. Kansas Pacific Railway Company, 97 U.S. 491, 497, 24 L.Ed. 1095: "It is always to be borne in mind, in construing a congressional grant, that the act by which it is made is a law as well as a conveyance, and that such effect must be given to it as will carry out the intent of congress. That intent should not be defeated by applying to the grant the rules of the common law, which are properly applicable only to transfers between private parties". The first sentence of the foregoing excerpt from the opinion in the cited case was quoted with approval by the Washington supreme court in McAllister v. Okanogan County, 51 Wash. 647, 653, 100 P. 146, 24 L.R.A.,N.S., 764.

hereby granted." The Oklahoma court, and many others in cases cited in the opinion in the Pruden case, have held that the right-of-way grant in the quoted act does not take effect until it is accepted by an act of a legislature of a state or by establishment of a highway and that one who acquires from the United States legal or equitable title prior to effective acceptance takes free and clear of the right-of-way grant.

The Washington Supreme Court, in McAllister v. Okanogan County, 51 Wash. 647, 100 P. 146, 148, 24 L.R.A.,N.S., 764, placed a like construction upon the federal right-of-way statute, quoted above. But in its opinion, the court gave as the principal reason for its holding the fact that the federal statute did not name any existing grantee, but only recited, in general terms, that the right-of-way was "hereby reserved". The court pointed out that the ultimate recipient of the grant might be "any corporation, whether public or private, capable of establishing highways". It quoted, as illustrative of its views, the following excerpt from Hall v. Russell, 101 U.S. 503, 25 L.Ed. 829:

> "There cannot be a grant unless there is a grantee, and consequently there cannot be a present grant unless there is a present grantee. If, then, the law making the grant indicates a future grantee and not a present one, the grant will take effect in the future, and not presently. In all the cases in which we have given these words the effect of an immediate and present transfer, it will be found that the law has designated a grantee qualified to take, according to the terms of the law, and actually in existence at the time."

 If we apply the same reasoning here, it leads us logically to the conclusion that the last sentence of section 5 of the Washington statute constituted a present, absolute grant of rights-of-way over state lands, since the statute named a then existing grantee, fully capable of accepting the grant, namely, the United States.

The court, in the Pruden case, distinguished Ide v. United States on the ground that there was an express reservation of rights-of-way for the United States in the instrument of conveyance in the Ide case, whereas in the Pruden case, the patent conveying the land did not contain any such reservation. We do not regard the distinction as controlling. If, as we have concluded, the Washington statute effected an absolute, immediate grant of rights-of-way to the United States, the grant could not be defeated by subsequent conveyance of the subject land by the state, without reservation of the rights-of-way and without actual notice to the grantee. We subscribe to the following statement, made by the Idaho district court in United States v. Fuller, D.C., 20 F.Supp. 839, 843, in dealing with a comparable Idaho statute:

> "It is made plain that when the defendant Fuller acquired the tract of land involved from the State that section 56–504, I.C.A., was in force which presented the situation as to put the defendant on inquiry respecting the rights which the United States possessed as to the right of way for the construction of a ditch and might exercise in the construction of an irrigation project. The failure to insert in the conveyance from the State to the defendant Fuller the reservation of such right of way as required by section 56–504, I.C.A., would not defeat the right of the United States under the statute, for the statute itself is notice to all grantees of State lands of the right of way for ditches constructed by authority of the United States."

 Defendants also contend that, if the last sentence of section 5, chapter 88, Laws of Washington, 1905, is construed as granting rights-of-way to the United States, then it would not be adequately expressed in the title of the act and would be void as in violation of article 2, section 19, of the Washington constitution, which requires that "No bill shall embrace more than one subject, and that shall be expressed in the title." The title of chapter

88 recites in part that it is "An Act * * granting to the United States certain rights in state lands * * *."[7] We think that is sufficient to meet the requirement of the state constitution. The Washington supreme court has said many times that the title of an act need not be an index of its contents. The title is sufficient if it gives such notice as should reasonably lead to an inquiry into the body of the act itself, or if it indicates to an inquiring mind the scope and purpose of the legislation.[8]

It is our conclusion that the United States has a right-of-way for irrigation canal purposes, granted to it by statute over tracts 4, 6, and 8 of the defendants.

Findings of fact, conclusions of law, and judgment may be presented accordingly. Since this is a condemnation case, rather than a declaratory judgment action, it would seem appropriate to enter judgment for the defendants for nominal damages.

7. The full title to chapter 88 is as follows: "An Act relating to the appropriation of waters of the State for irrigation purposes, granting to the United States the right to exercise the power of eminent domain in acquiring lands, water and other property for rights of way, and for reservoirs and other irrigation works, granting to the United States certain rights in State lands and in the waters of the State, relating to water users' associations, and declaring an emergency."

8. State ex rel. Zent v. Nichols, 50 Wash. 508, 97 P. 728; Shea v. Olson, 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998; De Cano v. State, 7 Wash.2d 613, 110 P. 2d 627; State ex rel. Washington Toll Bridge Authority v. Yelle, 32 Wash.2d 13, 200 P.2d 467; Randles v. State Liquor Control Board, 33 Wash.2d 688, 206 P.2d 1209, 9 A.L.R.2d 531.