[No. 37354. En Banc. April 29, 1965.]

THE STATE OF WASHINGTON, *on the Relation of Lawrence C. Shannon, Appellant*, v. GARLAND SPONBURGH *et al., Respondents.**

*Orvin H. Messegee*, for appellant.

*The Attorney General, Arthur Mickey* and *Paul D. Solomon, Assistants*, for respondents.

*Jacob H. Miller*, amicus curiae.

*Reported in 401 P.2d 635.

ROSELLINI, C. J.—On August 12, 1963, the Superior Court of Thurston County issued an alternative writ of mandamus directed to the Washington State Liquor Control Board, ordering it ". . . to perform all ministerial acts and to take all steps necessary pursuant to law to effectuate . . ." a relocation of a tavern license held by the relator, Lawrence C. Shannon, or to show cause why it should not do so.

On October 16, 1963, the trial court concluded that, under existing statutes, it did not have jurisdiction to review the actions of the Board. The court entered an order granting the Board's motion to quash the writ and dismiss the action. The relator, Shannon, appeals.

Since February 18, 1955, the relator has held State Liquor Control Board licenses, Class BCEF, for the Green Light Tavern, the only tavern in the Magnolia business district of Seattle. Under a previous owner the tavern had first been licensed in 1933. In late June 1962 the relator applied to the board for permission to change the tavern's location from 3210 West McGraw Street to 2410 32nd Avenue West, which is around the corner and across the street from the old location. The relator's landlord desired the premises for other commercial purposes.

On June 22, 1962, the Board posted the required public notices of the relator's application.

On July 2 the Board gave notice of the proposed relocation of the relator's tavern to the mayor of Seattle, pursuant to RCW 66.24.010(8). On July 19 the city notified the Board that the "Building Department reports disapproval because this location is about 250′ from W. Magnolia Playfield." The city subsequently withdrew this disapproval.

On July 6 the Board was informed by its inspector that the proposed new location was 444 feet from the entrance of the Magnolia Lutheran Church (the old location was 496 feet from the church) and 295 feet from the corner of the playfield used by students of Blaine Junior High School. On July 11 the Board informed the relator that the new location was within 500 feet of a church and that the Board was prohibited by RCW 66.24.010(9), (10) from issuing

the license unless the Board received written notice from an official representative of the church indicating that there was no objection to the issuance of the license. On July 15 the church approved the request for change of location " . . . as long as Mr. Larry Shannon operates his business in the excellent manner as in the past."

On July 20 the Board sent the relator the following notice:

*After careful consideration* the Board has approved your application for change of location from 3210 West McGraw Street to 2410 32nd West. This approval is subject to arranging the new premises as per sketch submitted, and proper equipping of the same.

Please notify this office or your inspector when these new premises are ready for occupancy, in order that the necessary reinspection may be made. (Italics ours.)

Upon receiving this notice of approval, the relator alleges, he purchased a sporting apparel business which had been conducted on the premises that the Board had approved for his new location. The purchase price was $19,250, of which he paid $10,000 cash as a down payment. The relator was required to enter into a 6-year lease at a rental of $200 per month and was required to pay the first and last month's rental in advance. It was necessary for the relator to expend substantial sums in remodeling and equipping the premises as ordered by the Board; and he realized only $3,500 at a bulk sale of the inventory that he had acquired in purchasing the clothing business. His life savings were expended in reliance upon the approval given him by the Liquor Control Board.

While he was remodeling the new premises, the relator was notified by the Seattle Building Department that the intended use of the premises would require a variance permit under the zoning ordinance of the city. He applied for the variance on September 12, 1962, and, after a 2½ hour public hearing attended by a representative group of approximately 100 citizens, the City of Seattle Board of Adjustment approved the variance on October 19, 1962. On November 26 the Seattle City Council approved the variance.

The Board and city authorities received a large number

of petitions and letters for and against permitting reloca-
tion of the tavern. They were from merchants in the Mag-
nolia District, ministers, various Parent-Teacher Associa-
tions, schools, the school board, churches, the Federation
of Women's Clubs and the Greater Seattle Council of
Churches.

On October 19, 1962, the Board wrote relator:

In view of the fact that the Board is receiving substan-
tial objections against the establishment of a tavern at
your proposed location, and the question of the legality
of establishing a tavern at this location as requested by
you also having been raised, the Board has directed that
you be informed that *the commitment heretofore given
by the Board is to be held in abeyance until further notice.*
(Italics ours.)

The record discloses that, at the instigation of the Board,
a meeting of approximately 22 protestants was held Decem-
ber 12, 1962, at the Board's warehouse offices in Seattle.
Relator and his supporters were neither invited to nor in-
formed of the meeting.

The following day, December 13, 1962, the Board informed
the relator that, in its judgment,

the best public interest would not be served by the estab-
lishment of a tavern operation at your proposed location;
and accordingly, it is withdrawing its commitment hereto-
fore given, and denying your application for change of
location.

On May 22, 1963, the relator submitted another applica-
tion for change of location. The Board notified the pro-
testants of the new application. A number of the protestants
renewed their objections.

On July 31, 1963, the Board informed the relator that
"the public interest would not be served by the establish-
ment of a tavern operation at the proposed location."

Although the relator and his counsel had several informal
meetings with the Board, their request for a formal hearing
was never granted.

The relator urges that the trial court erred in quashing
the writ, contending that the court did have the power to
review acts of the Liquor Control Board which were al-

leged to be arbitrary and capricious. The respondents maintain that their power is absolute and its exercise is not subject to review.

■ Ever since the adoption of the Washington State Liquor Act (Laws of 1933, Ex. Ses., ch. 62, p. 173) it has been the declared legislative policy of this state that control of the sale of alcoholic beverages is governed solely under the police power of the state. Section 2 of the act provides:

> This entire act shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose. RCW 66.08.010.

In *Ajax v. Gregory*, 177 Wash. 465, 32 P.2d 560 (1934), the court said:

> The right of the state, in the exercise of its police power, to either prohibit entirely the sale of intoxicating liquors or regulate the sale thereof is thoroughly established.

In *Derby Club v. Becket*, 41 Wn.2d 869, 873, 252 P.2d 259 (1953), the court again analyzed the problem and observed

> That the police power of the state is plenary with respect to intoxicating liquor is so well established as to need no citation of authority; however, see [citing 7 Washington decisions].

We again recognized this theory in *"U" District Bldg. Corp. v. O'Connell*, 63 Wn.2d 756, 388 P.2d 922 (1964).

The manner and extent of regulation, if there be regulation, rest in the legislative judgment of the state, and are a matter of legislative policy. *Ajax v. Gregory, supra.*

With this in mind, we examine the applicable statutes. The administration of the Washington Liquor Act is vested in the Liquor Control Board (RCW 66.08.020), the members of which hold office for a term of 9 years. RCW 66.08.014. The Board's general powers are defined in RCW 66.08.050. The Board may, in its discretion, grant or refuse any application for a license (RCW 66.24.010(2)), and may in its discretion, with or without hearing, suspend or cancel any license. RCW 66.24.010(3).

The legislature has purported to remove the actions of the Liquor Control Board from any threat of judicial review. RCW 66.08.150, which was originally adopted in 1933 (Laws of 1933, Ex. Ses., ch. 62, § 62, p. 201) provides:

Save as in this title otherwise provided the action, order or decision of the board as to any permit or license shall be *final* and shall not be reviewed or restrained by injunction, prohibition or other process or proceeding in any court or be removed by certiorari or otherwise into any court. RCW 66.08.150. (Italics ours.)

The Liquor Control Board was specifically exempted from the operation of the Administrative Procedures Act. Laws of 1959, ch. 234 § 15, p. 1088. (Codified as RCW 34.04.150)

█ The 1963 legislature amended Laws of 1959, ch. 234, § 15, removing the Liquor Control Board from the exclusionary provision of the Administrative Procedures Act. Laws of 1963, ch. 237. This indicates a changing legislative policy, recognizing the efficacy of judicial review in a proper case, however "plenary" the legislative power may be. But we need not rest our decision here on the applicability of that amendment.

We are concerned with a purportedly final decision of the Liquor Control Board, which the Board itself reviewed and reversed, after the relator had justifiably acted in reliance upon it, expending his funds as he was directed to do by the order, and this, it is alleged, without any indication of fraud or illegality affecting the original decision.

█ In the case of *State ex rel. Cosmopolis Consol. School Dist. v. Bruno*, 59 Wn.2d 366, 367 P.2d 995 (to which the writer of this opinion dissented but which is now the law of this state), this court held that it has a constitutional power to review acts of public officials which are alleged to be arbitrary and capricious, a power which cannot be abridged by the legislature. The facts of this case present an excellent occasion for the application of the rule laid down in that opinion. It is difficult to imagine an act of an administrative agency which would be more arbitrary and capricious than that of the Liquor Control Board in reversing its prior decision without legal justification. The

trial court erred in holding that the judicial branch of the government lacks power to review such an act.

If the action of the Liquor Control Board in revoking its approval of the change in location was arbitrary and capricious, the trial court may set it aside.

The Liquor Laws of Washington, Revised Rules and Regulations, Title I (10) Change of Location, provide that:

> No change of location of licensed premises shall be made without the written consent of the board.

Once the Board's decision was made to give its consent and it had conveyed the same in writing to the relator, the only remaining act to be done (apart from inspecting the premises to see that remodeling conformed to the furnished sketch) was the purely ministerial act of typing a different address on a piece of paper.

RCW 66.08.150 quoted above provides *inter alia*:

> Save as in this title otherwise provided the action, order or decision of the board as to any permit or license shall be *final* . . . . (Italics ours.)

As is said in *People ex rel. Finnegan v. McBride*, 226 N. Y. 252, 123 N. E. 374,

> Public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made, however much they may have erred in judgment on the facts, even though injustice is the result. A mere change of mind is insufficient.

Or, as is said in *St. Patrick's Church Corp. v. Daniels*, 113 Conn. 132, 154 Atl. 343,

> The situation here presented is not that which has most frequently been subjected to question in the courts—a reconsideration and reversal of decision upon the same application or appeal. As to this, it appears to be well established that a zoning board of appeals or adjustment should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence.

Also see *Matter of Evans v. Monaghan*, 306 N. Y. 312, 118 N.E.2d 452; *609 Holding Corp. v. McGoldrick*, 204 Misc. 26, 115 N.Y.S.2d 395; *State ex rel. McGowan v. Board of Elections of Summit Cy.*, 64 Ohio L. Abs. 307, 111 N.E.2d 689 (April 8, 1952), 157 Ohio St. 428, 105 N.E.2d 639 (April 30, 1952); and our own Washington cases of *Knestis v. Unemployment Compensation & Placement Div.*, 16 Wn.2d 577, 134 P.2d 76; *Abraham v. Department of Labor & Indus.*, 178 Wash. 160, 34 P.2d 457.

In the *McBride* case, *supra*, it was said that what may be corrected by setting a proper determination aside must have resulted from "illegality" (here the approval was admittedly lawful), "irregularity in vital matters" (here none such are pleaded), or "fraud" (again no such claim is made).

Even in cases where technical illegality appears, if the facts that would have brought such illegality to the attention of the agency were before it, the courts have at times refused to permit a reversal of position. A case of striking similarity in fact pattern, is *Tirdell v. State Liquor Authority*, 15 App. Div. 2d 773, 225 N.Y.S.2d 183. The State Liquor Authority on January 4, 1961, granted an application for permission to relocate. Two doors of a school were within the proximity prohibition of the New York Alcoholic Beverage Control Law. Following approval, the licensee entered into a 5-year lease and expended considerable sums for alterations and improvements. Upon objections thereafter being raised, the authority reconsidered its prior approval, after which it reversed its earlier determination. The court says:

> This action was based solely on a finding of fact that the premises were within the distance prohibited by subdivision 3 of section 105 of the law. As heretofore stated, that fact had been at all times before the Authority and was one of the grounds stated by the local board for its recommendation of disapproval of the application. "Security of person and property requires that determinations in the field of administrative law should be given as much finality as is reasonably possible." (*Matter of Evans v. Monaghan*, 306 N. Y. 312, 323, 118 N. E. (2d) 452, 457.) After lengthy proceedings and a futile attempt to establish

that fraud had been practiced on the Authority the latter blandly reversed its original determination upon the unsupported and erroneous finding that when such determination was made the true facts were not before it. This the respondents may not do. We lay down no broad rule that an administrative agency in a proper case may not upon reconsideration correct its own errors. [Citing the *McBride* case, supra]. Moreover, where, as in this proceeding, a licensee has expended large sums of money and become bound by a contractual obligation extending for a period of years, the Authority should not, in the absence of justifying circumstances, be permitted to alter its determination.

According to the relator's allegations, all of the material facts which influenced the State Liquor Control Board in changing its decision were before it when that decision was first made, and the vacillation of the Board in first approving a change of location and then repudiating that action caused the relator to lose a large sum of money.

To prevent grave injustice in situations such as this, many courts have applied the doctrine of equitable estoppel, even against governmental bodies. See *Denver v. Stackhouse,* 135 Colo. 289, 310 P.2d 296; *Mellette Cy. v. Arnold,* 76 S. D. 210, 75 N. W.2d 641, and *Khoury v. Board of Liquor Control,* 52 Ohio L. Abs. 434, 81 N.E.2d 634.

The doctrine of equitable estoppel is properly applicable in a case such as this, otherwise the whim of an administrative body could bankrupt an applicant who acted in good faith in reliance upon a solemn written commitment.

It is true that a governmental body cannot be estopped by an act of its agent which is not within the agent's authority. *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643. But here there is no suggestion that the original decision was unlawful.

The conduct of government should always be scrupulously just in dealing with its citizens; and where a public official, acting within his authority and with knowledge of the pertinent facts, has made a commitment and the party to whom it was made has acted to his detriment in reliance on that

commitment, the official should not be permitted to revoke that commitment.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

FINLEY, OTT, HUNTER, HAMILTON, and HALE, JJ., concur.

WEAVER, J. (dissenting)—The sole question for our determination is whether the superior court had jurisdiction to review the action of the Washington State Liquor Control Board at the time the instant case arose. In support of his contention that the superior court had jurisdiction, relator urges that: (1) the Board's action was so grossly unfair, arbitrary and capricious that he is entitled to judicial relief, and (2) review is provided by the Administrative Procedures Act. RCW 34.04.

The original Washington State Liquor Act provided that the Board could suspend or cancel a license only "after a hearing had and assigning a reason therefor." Laws of 1933, Ex. Ses., ch. 62, § 27(2). I believe it significant and *indicative of legislative intent* that the 1935 legislature removed from the statute the necessity of a hearing. Laws of 1935, ch. 174, § 3, p. 610.

The crux of our problem is the interpretation and application of RCW 66.08.150, which was originally adopted in 1933. Laws of 1933, Ex. Ses., ch. 62, § 62, p. 201. The statute provides:

Save as in this act otherwise provided *the action*, order or decision *of the board* as to any permit or license shall be final and shall not be reviewed or restrained by injunction, prohibition or other process or proceeding in any court or *be removed by certiorari* or otherwise *into any court*. RCW 66.08.150. (Italics mine.)

It appears to be the manifest legislative intent that the Liquor Control Board is vested with the sole and exclusive authority, within standards set by statute, to issue, deny, transfer, suspend or cancel licenses.

Relator would have us burke RCW 66.08.150 after it has stood as an unambiguous declaration of legislative policy for

more than 30 years.[1]  The majority opinion ignores the statute, which states in unequivocal terms that there is no jurisdiction to hear any case involving the Board's decision as to any liquor license.  The language could not be plainer. The effect of the majority opinion is to hold the statute unconstitutional.

Although the question involved is different, the rationale of the state's control of the sale of alcoholic beverages is recognized and well expressed in *Randles v. State Liquor Control Bd.*, 33 Wn.2d 688, 694, 206 P.2d 1209, 9 A.L.R.2d 531, (1949), as follows:

> The state, under its police power, may prohibit entirely the carrying on of such business and may regulate it in such a manner as may be deemed advisable.  The times when, the places where, and the persons to whom it may be sold, may be determined by the state.  The privilege of dispensing intoxicating liquor may be given to some and denied to others.  In considering claims of discrimination and the denial of alleged rights, the distinction between a lawful business which a citizen has the right to engage in and one in which he may engage only as a matter of grace of the state must be constantly in mind.

It is more than a coincidence that neither party has been able to cite us an opinion of this court in which judicial review of an action of the Liquor Control Board has been recognized. I know of none.[2]  The absence of such an opinion is indicative of the general acceptance of the rule, expressed in RCW 66.08.150, that the decisions of the Board are final and not subject to judicial review.  The purpose is to avoid substituting judicial judgment for administrative discretion exercised under the police power.

The majority places undue emphasis on the case of *State*

[1]Relator does not challenge the constitutionality of RCW 66.08.150, and RCW 66.24.010(3). The question is presented in the brief of amicus curiae, but, since it was not presented to the trial court, we cannot consider it on appeal. *Long v. Odell*, 60 Wn.2d 151, 372 P.2d 548 (1962), and cases cited therein.

[2]I am aware of *State ex rel. Stone v. Wright*, No. 29468, in this court. An application for writ of certiorari to review the trial court's refusal to entertain a review of the Board's cancellation of a liquor license was denied without opinion.

*ex rel. Cosmopolis Consol. School Dist. v. Bruno,* 59 Wn.2d 366, 367 P.2d 995 (1962). We held that the trial court had jurisdiction to hear that case even though the legislature had not specifically provided for such jurisdiction. The majority in the instant case now holds that even when the legislature provides that there shall be no judicial review (RCW 66.08.150), this court has jurisdiction. This extension of the *Cosmopolis* case is unwarranted and the factual difference makes that case inapposite.

If the rule is to be eliminated (absent a determination of unconstitutionality, see note 1), and state policy changed, it is not the province of the court, but the province of the legislature to change the law.

Has the legislature done so? This question presents relator's second contention—that the Administrative Procedures Act requires review of the Board's actions.

Originally, the Liquor Control Board was specifically exempted from the operation of the Administrative Procedures Act. Laws of 1959, ch. 234, § 15, p. 1088. (Codified as RCW 34.04.150.)

Laws of 1963, ch. 237 (RCW 34.04.150), is entitled:

AN ACT relating to administrative procedure of state agencies; *including the liquor control board within the scope of the administrative procedures act*; and amending section 15, chapter 234, Laws of 1959 and RCW 34.04.150. (Italics mine.)

The 1963 amendment of Laws of 1959, ch. 234, § 15 removing the Liquor Control Board from the exclusionary provision of the Administrative Procedures Act became effective June 13, 1963.

All the Board's actions on relator's application for relocation of his tavern occurred prior to the effective date of the amendment of RCW 34.04.150 except the disposition of his second application which was denied July 31, 1963.

Further, § 17 of the Administrative Procedures Act (RCW 34.04.910) provides:

All acts or parts of acts which are inconsistent with the provisions of this chapter are hereby repealed, *but such repeal shall not affect pending proceedings.* RCW 34.04-.910 (Italics mine.)

Relator's application was a "pending proceeding" at the time RCW 34.04.150, as amended, became effective June 13, 1963. Assuming, arguendo, that the omission of the Liquor Control Board from the exclusionary provision of the Administrative Procedures Act effected a repeal by implication of RCW 66.08.150 (quoted *supra*), a question that need not be decided in the instant case, " . . . such repeal shall not affect pending proceedings"; hence, relator gained nothing by the adoption of Laws of 1963, ch. 237.

For the reasons stated, I would affirm the judgment of the trial court.

HILL and DONWORTH, JJ., concur with WEAVER, J.