238 So.2d 836 (1970)
C. Farris BRYANT et al., As and Constituting and Composing the Trustees of the Internal Improvement Fund of the State of Florida, and Siesta Properties, Inc., Petitioners,
v.
Elizabeth Hulda PEPPE, R.A. Holman and Mary Holman, Husband and Wife, and Alice W. Beebe, Respondents.
No. 39108.
Supreme Court of Florida.
July 13, 1970.
Rehearing Denied September 21, 1970.
*837 Philip S. Bennett, Tallahassee, for Trustees of the Internal Improvement Fund, petitioners.
A. Lamar Matthews, Jr., and W.T. Harrison, Jr., of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for intervenor-petitioner.
Hall, Hartwell, Michaels & Hall, Tallahassee, Clyde H. Wilson, Thos. W. Butler, of Butler & Weber and John F. Burket, Jr., of Burket, Smith & Bowman, Sarasota, for respondents.
ROBERTS, Justice.
This cause is before the court on direct-conflict certiorari to review the decision of the District Court of Appeal, Second District, in Bryant v. Peppe, Fla.App. 1969, 226 So.2d 357. Jurisdiction attaches because of a conflict on the same point of law with City of Naples v. Morris, Fla. 1954, 71 So.2d 905, and Blackburn v. Florida West Coast etc., Fla.App. 1959, 109 So.2d 413.
The controversy revolves around a narrow strip of land that was, until the 1926 hurricane, a narrow body of water known as Little Sarasota Pass between Siesta Key and Casey Key. Litigation between the owners of land formerly lying on either side of the Pass to determine the ownership of the suddenly created parcel of land resulted in a "draw"  both the trial and the appellate courts holding that neither of the private parties could prevail. The basis for the ruling was that the title to the water bottom, prior to its sudden emergence as dry land following the hurricane, was in the State of Florida by virtue of its sovereignty; that changes resulting from avulsion  a sudden change in the land formation resulting usually from the elements  do not effect a change in the boundaries and ownership of the land as it existed prior to the avulsion, so that neither of the parties had shown any right or title to the land; and by way of dictum, that title was, in fact, still in the State of Florida. See Siesta Property, Inc. v. Hart, Fla.App. 1960, 122 So.2d 218.
Since the State was not a party to the Siesta Properties suit, supra, the instant suit was then filed by some of the parties to that suit against the Trustees of the Internal Improvement Fund in the form of a quiet-title action. The trial court entered a summary decree holding that title was vested in the Trustees, subject only to the pleas of equitable estoppel and laches filed by the plaintiffs as counter-defendants in their answer to the Trustees' counterclaim seeking to quiet title to the property in the State. This decree was affirmed on appeal. Peppe v. Bryant, Fla.App. 1966, 190 So.2d 795. Upon the remand, the trial court heard evidence on the issues made by the pleas of equitable estoppel and laches and found in favor of the plaintiffs. He based his conclusion on a finding that the tax assessor had for many years assessed the property as Gulf-front property, thereby causing the plaintiffs to pay larger sums in taxes than would have been the case had the subject property been properly excluded from taxation. The appellate court's decree of affirmance is the decision brought here for review by the Trustees.
In support of their petition the Trustees contend that the decision will, in effect, apply the doctrine of equitable estoppel to vest title to state-owned land in private persons who have no vestige of title emanating from the state in support *838 thereof, contrary to the City of Naples and Blackburn decisions, supra. This point is well taken. These decisions stand for and reaffirm the rule that the plea of equitable estoppel is not available to establish a title but only to defend apparent title  the purpose of this rule being "to prevent the uncertainty of titles which would arise if * * * parol evidence of an estoppel could be introduced to show that the paper title is not what it appears to be." The rule is not applicable where the plea of estoppel "serves to defend and not to destroy the apparent paper title." City of Naples v. Morris, supra, quoting Stone v. Culver, 286 Mich. 263, 282 N.W. 142, 119 A.L.R. 512.
Moreover, we are here concerned with a plea of equitable estoppel sought to be invoked against the state. As stated in North American Company v. Green, Fla. 1959, 120 So.2d 603, "[t]he instances are rare indeed when the doctrine of equitable estoppel can effectively be applied against state action." It is only when the plea is supported by special and exceptional circumstances that it will be sustained against the state. Trustees of the I.I. F v. Lobean, Fla. 1961, 127 So.2d 98. Accord: 31 C.J.S. Estoppel § 140, p. 692; Pet Car Products, Inc. v. Barnett, 1962, 150 Conn. 42, 184 A.2d 797; State v. Sponburgh, 1965, 66 Wash.2d 135, 401 P.2d 635.
In addition, the plea is attempting to divest the state of the title to state-owned land. In no case heretofore decided by this court or an appellate court has the principle of equitable estoppel been applied to divest the state of its land except to bolster a paper title emanating from the state. See Daniell v. Sherrill, Fla. 1950, 48 So.2d 736, 23 A.L.R.2d 1410; Trustees of the I.I.F. v. Bass, Fla. 1953, 67 So.2d 433; Trustees of I.I.F. v. Lobean, Fla. 1961, 127 So.2d 93; Florida Board of Forestry v. Lindsay, Fla.App. 1967, 205 So.2d 358; Rotolante v. Metropolitan Dade County, Fla.App. 1962, 143 So.2d 212. See also Stein v. Brown Properties, Inc., Fla. 1958, 104 So.2d 495.
The decision in Trustees of the I.I.F. v. Claughton, Fla. 1956, 86 So.2d 775, is not an exception to the statement made above concerning the necessity of a paper title in order to work an equitable estoppel against the state's title to state land. The 15-acre tract there in controversy was owned by the City of Miami, by virtue of a legislative grant, at the time the affirmative actions were taken by the city in requesting the private owner to bulkhead the 15-acre tract, at his own expense, to contain the fill previously deposited thereon by the federal government with the consent of the city; and it was the city that had levied and collected a tax on such 15-acre parcel and had admitted in litigation contesting such tax that the parcel was the property of the private owner. When, during the course of the litigation, the city quitclaimed its interest, if any, in the parcel to the Trustees, the Trustees were, of course, bound by the actions of its predecessor in title concerning a parcel that was not sovereignty but city-owned land. Thus, as noted in Gies v. Fischer, Fla. 1962, 146 So.2d 361, as against the Trustees, the doctrine of equitable estoppel was applied only to "further bolster" the title where fill operations had been accomplished and to cutoff all residual public rights that might still exist in favor of the state in line with the decisions, therein cited, defining the nature of the state's title in sovereignty lands in general, and the restrictions inherent in its powers of alienation.
The particular parcel here in question was originally sovereignty land; and it did not lose that character merely because, by avulsion, it became dry land. See Martin v. Busch, 1927, 93 Fla. 535, 112 So. 274, which is somewhat similar to the instant case. There, the avulsion resulting in the water bottom becoming dry was artificially rather than naturally created, resulting from a drainage project undertaken by the *839 state. The court noted that, when the water receded suddenly, the "title to such lands, which remained in the state just as it was when covered by the lake. The riparian rights doctrine of accretion and reliction does not apply to such lands." It was also stated that the defendants took their conveyances of swamp and overflowed lands with notice that the conveyance "does not in law cover any sovereignty lands." 112 So. at page 285.
Similarly, it must be held that plaintiff-respondents were charged with notice that the sudden avulsion of the parcel in controversy gave them no more title to it than they had to the water bottom before its emergence as dry land. And the mistaken actions of the tax assesor in assessing the property as water-front property will not, standing alone, support a plea of equitable estoppel against the state. See Casale v. Pension Commission, 78 N.J. Super. 38, 187 A.2d 372; State v. Sponburgh, 1965, 66 Wash.2d 135, 401 P.2d 635; cf. North American Company v. Green, supra, 120 So.2d 603.
For reasons stated, the decision here reviewed is quashed, and the cause remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
ERVIN, C.J., and THORNAL and ADKINS, JJ., concur.
DREW, J., dissents with opinion.
CARLTON, J., dissents and concurs with DREW, J.
DREW, Justice (dissenting).
I would affirm District Court of Appeal.
CARLTON, J., concurs.