COWART, Judge.
This case involves the concept of estoppel as applied to the State’s assertion of title to lands claimed to be sovereignty lands.
About 1962 the then owner of certain uplands (being appellee’s remote predecessor in title) erected a seawall at some point near the shoreline of Crystal River in Citrus County, Florida,'and filled the lowlands lying landward of the seawall. The erection of the seawall and the filling apparently was done without approval of the State, if such approval was needed. The location of the high water mark at the time immediately before the seawall was built is one of the factual issues in this case and is not established of record, but one survey in the record shows that the seawall crosses the meander line shown on the original survey. To the extent, if any, the high water mark was landward of the seawall when the lands were filled in 1962, the seawall and fill apparently covered the submerged bottom land or bed of Crystal River which the State claims to be sovereignty lands.
Appellee, Railway Marketing Corporation, bought all property in question in April, 1980, by deed containing a metes and bounds description that uses the seawall as one boundary call and includes the fill area behind the seawall. In August, 1980, ap-pellee filed an application with the State for a permit to repair and restore the existing seawall and to refill areas washed out behind breaks in the seawall. In response the State requested certain information about when the original seawall and fill were completed and under what authority, and also requested a survey, made according to its requirements and procedures, as to both the location of the seawall with respect to the current mean high water line (1980 MHWL) and documentation as to the historic mean high water line as it was located before the seawall was erected and fill work done. Appellee sent the State a 1980 survey showing the seawall and the current mean high water level. That survey was duly examined and approved by that bureau of the department of the State concerned with determining if the surveying procedures used were in conformity with the State’s requirements. The approval form read:
This constitutes an approval of the procedures utilized in the determination of the elevation of mean high water and/or the location of the mean high water line. This will in no way estop the State of Florida from contesting the location of the mean high water line in any subsequent judicial or administrative proceeding.
Rather than await the State’s action on its application, appellee acted on this approval of procedures used by the appellee’s surveyor in determining the location and elevation of the current mean high water *842 level, obtained a permit from the Citrus County Planning and Zoning Board, and proceeded to restore the seawall and eroded fill area at a cost of about $38,000.
Appellee never provided the State with the information requested as to the original construction of the seawall and fill or documentation as to the historic mean high water level,'and on May 21, 1982, the State (DER) denied appellee’s application because of the failure to provide the requested information.
Appellee contracted to sell the land subject to certain zoning changes, and while the rezoning request was being considered the State notified the county zoning authorities that it claimed title to a portion of the property landward of the seawall. When the county tabled the rezoning request, ap-pellee filed a quiet title action against the State. In its complaint appellee claimed good title against the State on the basis of (1) conveyances of the lands in question (including tax deeds) from the State, (2) estoppel based on payment of taxes by appellee and its predecessors in title, and (3) the effect of the Marketable Record Title Act, Chapter 712, Florida Statutes. The State answered and filed a pleading denoted as an affirmative defense but which is mostly a composition of legal and factual arguments against appellee’s actual or potential legal positions in the case. The State also filed a counterclaim to quiet title in the State as to “a portion of” the riverbed of Crystal River claimed to have been illegally filled. Appellee replied and answered the counterclaim and filed affirmative defenses to the State’s counterclaim.
Appellee filed a motion for summary judgment which asserted among many other things that “Railway maintains by this motion that the trustees are estopped as a matter of law from attempting to formulate a new MHWL because (a) the trustees approved the 1980 MHWL survey with full knowledge that Railway would act in reliance thereon to its detriment....”
The trial court entered summary judgment for appellee and against the State on all issues stating that by virtue of the State’s affirmative conduct in approving appellee’s mean high water line survey the State was equitably estopped as a matter of law from attempting to prove a different mean high water line which was essential to its assertion of title to any filled bottom lands. We reverse the summary judgment and remand for further proceedings.
The State’s approval of the procedures utilized in the determination of the elevation and location of the current mean high water line on the 1980 survey submitted by appellee, if reasonably relied upon by appellee to its detriment, might estop the State from later disapproving the survey submitted to it on the ground that the survey was not made in accordance with the State’s required procedures. However, that would appear to be the limit of the concept of estoppel as to the State’s approval of the 1980 mean high water line (MHWL) survey submitted by appellee. The State’s claim of title depends on the location of the original natural mean high water line before the seawall was constructed and fill made, not where that line was located afterwards. Because the very purpose of a seawall is to protect the land and to confine the water, one need not be an engineer to expect the high water mark to be located at the face of a seawall, at least when the water is at high levels, which is exactly where appellee’s survey showed the current mean high water line to be. The location of the mean high water line after erection of the seawall is not determinative of the State’s claim and its factual determination, or the estoppel of the State to dispute it as a fact, is not dispositive of the issues framed by the pleadings in this case. Indeed, approval of the procedures used in making the 1980 MHWL survey as a basis for an estoppel against the State was not even alleged in appellee’s complaint or in its affirmative defenses to the State’s counterclaim. The State’s approval of the procedures used in making appellee’s 1980 MHWL survey does not estop the State from proving the historic natural mean high water line or assert *843 ing title to submerged lands under meandered navigable waters of the State.
Our decision and disposition of this appeal do not involve the application of the Marketable Record Title Act or any other issue of fact or law not discussed in this opinion.
REVERSED AND REMANDED.
DAUKSCH and ORFINGER, JJ., concur.