COBB, Judge.
The appellants, hereinafter designated the State, challenge the trial court’s adverse judgment in regard to their counterclaim seeking quiet title in the State to some 7.1 acres of filled land adjacent to the Crystal River in Hernando County. The original plaintiff below, Railway Marketing Corporation, has cross-appealed the trial court’s partial summary judgment in regard to its defense of equitable estoppel. For the reasons set forth in our prior opinion in Florida Dept. of Natural Resources v. Railway Marketing Corp., 485 So.2d 840 (Fla. 5th DCA), rev. denied, 492 So.2d 1334 (Fla.1986), we find no merit in the cross-appeal. See also, Bryant v. Peppe, 238 So.2d 836 (Fla.1970).
In 1962, Railway’s predecessor in title to land on the south side of the Crystal River erected a seawall and filled the area lying landward of this seawall. In 1982, Railway filed an action to quiet title to certain lands it claimed along the river, including the 7.1 acres of filled land, and contended the State was equitably estopped from asserting any claim of title because it had allowed Railway to expend some $38,000.00 in seawall repairs and refilling without objection. The State, counterclaimed to quiet title, contending the disputed property was sovereign land that had been filled without State approval.
The trial court entered summary judgment for Railway in 1985. We reversed, holding that the State was not estopped “from proving the historic natural mean high water line or asserting title to submerged lands under meandered navigable waters of the state.” See Railway at 842-843.
On remand, the trial court entered a partial summary judgment in favor of the State on Railway’s defenses, and reserved for trial the issue of whether the area claimed by the State was filled sovereign land. The trial court’s pretrial order framed the issue as follows:
The boundary separating the real property claimed by the parties hereto is the line of the mean high water of the Crystal River as it existed prior to the placement of fill thereon. The issue for trial is the location of the filled land claimed by the state relative to the pre-fill mean high water line.[1]
At the non-jury trial it was established that the 1962 fill, to a depth of several feet, rendered impossible a conventional on-site mean high water line (MHWL) survey to determine the location of the pre-fill line. The only expert witness at trial in regard *1348 to MHWL surveys was one Mark Stokes, a registered professional land surveyor, who was called by the State. He reconstructed the location of the pre-fill line, and determined that it was back against the tree line of the railway site and that the pre-fill continuity of this line across the railway and adjoining sites was apparent from a 1960 aerial photo. Stokes opined that the 7.1 acres in dispute was waterward of the pre-fill MHWL even allowing for a twenty to twenty-five foot margin of error.
On cross-examination, Stokes acknowledged that there are intermittent rises (berms) along the river that may be ten to fifteen feet wide. Furthermore, the rises might be above the MHWL by two or three hundredths of a foot, but less than fifty percent of the total rise would normally be above the MHWL. The 1960 aerial photo also showed a tidal creek on the Railway site which Stokes maintained was normally significantly below the MHWL. Finally, Stokes advised the court that there was no way an expert could tell whether a rise ran along the seawall area of the Railway site in its pre-fill condition.
At the conclusion of the evidence, the trial court made the following comments:
I’m admitting on the record that the State would have gone where the tree line would have, let’s say, or where Mr. Stokes said he was very conservative and moved it up, I think he said to the canopy, about twenty feet or something like that.
Then I would be saying, okay, that’s true, the State would have owned from there forward, less the berm areas. But in order to make it equitable and get this thing settled once and for all, I’m going to say that the berm area, based on the inferences from the facts, is a hundred feet wide by the length of that boundary line. Nobody has testified to that, but in order to settle this thing once and for all, I’m going to go up that hundred feet and say, okay, you got, your boundary line now, State, is a hundred feet away from where Mr. Stokes said that.
Where there is no evidence of that at all. It’s strictly trying to off-set, do I have the inherent power to do something like that.
Or do you have to agree with Mr. Hubener, that it’s State you win, or State you lose.
Thereafter, the trial court proceeded to sign a final judgment prepared by counsel for Railway. The judgment found that the State had failed to establish its title by “clear and convincing evidence.” The judgment found, inter alia:
It is unrefuted that immediately adjacent to the open waters of the Crystal River exists a strip of property generally 10 to 15 feet in width, which, intermittently lies above the historical mean high water line elevation. Title to said lands is vested in RAILWAY MARKETING CORPORATION as such was included in the conveyance of Government Lot 4. The record reflects that state experts could have determined such yet for whatever reason did not. It is significant to the court that the state’s expert witness contract with the State expressly limited the scope of his authority and likely prohibited the discovery of the aforementioned parcel(s) of property lying above the historical mean high water line elevation. This error is material and fundamental.
The court’s “factual findings” in respect to the ten to fifteen foot rise, or berm, are without evidentiary foundation. The testimony was that the berm was intermittent along Crystal River, not necessarily at the Railway site. Even if such a berm had existed at that site, it may or may not have been above the mean high water line. Certainly, there was no testimony that any such hypothetical berm between the tree line and the river at the Railway site was an extension of the upland owned by Railway. See Siesta Properties, Inc. v. Hart, 122 So.2d 218, 221 (Fla. 2d DCA 1960). Moreover, there was no testimony about any contract between the State and Stokes to the effect that the latter’s authority was limited in any way.
The trial court, in effect, hypothecated the existence of a berm above the mean high water line at the railway site, absent any evidentiary basis therefor. It also hy- *1349 pothecated that the berm connected with the upland and equated to a parcel of some 7.1 acres, which it decided constituted an “equitable set-off.” Despite the trial court’s express acknowledgment that there was no testimony to support its findings, it then exercised some “inherent power” to deny the State’s title to the disputed 7.1 acres. We hold, contrary to the unsupported findings of the judgment signed by the trial court, that the State’s title was established with “clearness, accuracy, and certainty.” See Brickell v. Trammell, 77 Fla. 544, 82 So. 221, 229 (1919).
REVERSED AND REMANDED FOR ENTRY OF JUDGMENT FOR THE STATE.
JOHNSON, W.C., Jr., Associate Judge, concurs.
GOSHORN, C.J., dissents, with opinion.

. See Lopez v. Smith, 145 So.2d 509 (Fla. 2d DCA 1962) (the boundary of original conveyances from the state with respect to fractional sections bordering tidal or navigable water bodies is the mean high water line).